JOHN C. CRISPIN AND MICHELLE CRISPIN, HIS WIFE, PLAIN-
TIFFS-RESPONDENTS, v. VOLKSWAGENWERK, A.G., A WEST
GERMAN CORPORATION AND VOLKSWAGEN OF AMERICA,
INC., A NEW YORK CORPORATION, DEFENDANTS-APPEL-
LANTS.

Argued December 12, 1983—Decided June 13, 1984.

*David J. Sheehan* argued the cause for appellants (*Crummy, Del Deo, Dolan & Purcell*, attorneys).

*Stephen S. Weinstein* argued the cause for respondents (*Stephen S. Weinstein*, attorney; *Martin Liberman*, on the brief).

The opinion of the Court was delivered by

O'HERN, J.

Shorn of its procedural complexities, this case presents two issues for decision: (1) Should the entire controversy doctrine be extended to compel joinder of parties, and if so, should it be extended retroactively, thus barring a later suit against a tortfeasor intentionally omitted in an original action? and (2) Should an attorney's tactical delay of thirteen months in serving a summons on the omitted tortfeasor, in violation of the ten day rule, *R.* 4:4–1, require that the client's claim be dismissed with prejudice? We hold that the paramount policies of our law require in both instances that the plaintiff be afforded an opportunity to have the claim adjudicated on the merits. We further find that the trial tactics employed by plaintiff's counsel were questionable and refer the matter to the Office of Attorney Ethics for possible disciplinary action.

At the age of 27, John Crispin was paralyzed as a result of a December 10, 1977 multi-car highway accident. He alleges that the 1971 Volkswagen he was operating was defectively designed and that the Volkswagen defendants fraudulently concealed this defect from the driving public. He suffered a fracture of the spine causing permanent quadriplegia, and the loss of sexual, bladder, and bowel functions. He also suffered from amnesia and respiratory loss and was seriously disfigured and scarred. He seeks compensation for these injuries and the pain and suffering caused by them. His wife sues for her own loss of his love and companionship. Hereafter our references to "plaintiff" embrace both of their claims.

The December 1977 accident involved three cars: one driven by plaintiff Crispin; one by Victoria Rapicka with a passenger, Mary Lothrop; and the third driven by Joseph Morrison. Crispin's car entered a southbound lane of the Garden State Park-

way from a construction site near milepost 136.5 in Clark, Union County. His car was struck in the rear by Rapicka's and hers, in turn, by the Morrison car.

This accident spawned many lawsuits, but for our purposes only three are germane.[1] The first proceeding, conducted in Union County, was a predicate action to the other two. In Union County, Crispin, Lothrop, and Rapicka all filed separate suits against the various parties, including the New Jersey Department of Transportation (DOT), which maintains that section of the Parkway, and S.J. Groves & Sons Company (Groves), the construction contractor on the site. The cases were consolidated in February 1979.

Volkswagen was not originally named as a defendant in any of the suits filed in Union County in 1978 since no party was apparently aware of a possible defect in the Crispin car. However, on November 8, 1979, the ABC television show "20/20" reported that the Volkswagen Beetle had a design defect referred to as an "ejector seat." As a result of a faulty seat track, there was a tendency for the front seat to tear loose and collapse, causing the front seat occupants to be hurled toward the heavily weighted engine structure in the rear.

Crispin's attorney became aware of the "20/20" report shortly thereafter. He asserts that he made diligent efforts to trace the car, which he believed to have been sold for salvage, in order to determine whether the seat had in fact been torn up in this accident and to gather expert evidence for trial. He asserts that these efforts were unproductive in the short run, leading him, in uncertainty, to file a complaint in Bergen County on December 7, 1979, to toll the statute of limitations, which he believed would run out on December 10. Despite the fact that the three consolidated matters were pending trial in Union County, he made no effort to join Volkswagen in Union

---

[1]We have omitted in this recitation some of the procedural steps not relevant to the central issues.

County or to inform the court or other parties of that action. Rather, he filed this action in Bergen County assertedly because that was the headquarters of Volkswagen of America. Significantly, however, he issued no summons.

In the spring of 1980, DOT, also having learned of the "20/20" program, moved for leave to file a third-party complaint against Volkswagen in the Union County consolidated action. On May 2, 1980, the return date of the motion, plaintiff's counsel did not take a position and continued to conceal the existence of the Bergen County suit. The trial court denied DOT's motion to join Volkswagen, commenting that it was a matter of balancing the advantage of a joint trial with all possible defendants against the expected delay of one year in bringing to trial a matter involving "what I recognize is a very serious injury." DOT sought leave to appeal this denial. At this point, plaintiff's counsel argued in his Appellate Division brief that DOT's motion had been denied correctly because of its failure to present the court with an expert's report to support its position, despite the fact that plaintiff had already filed suit on the very same theory.

The Appellate Division denied DOT's motion for leave to appeal and the Union County litigation continued. Morrison, the driver of the third car, was granted summary judgment and was then out of the case. Crispin's claims against DOT and Groves were settled for $200,000 plus an annuity valued at $650,000, payable over a twenty-five year period. Rapicka's claims against Crispin were settled out of court as well.

The remaining case in Union County, involving Rapicka's passenger, Lothrop, was tried in October 1980. The jury apportioned liability in the following percentages: Crispin 67%; Groves 13%; DOT 20%. Rapicka was found not negligent.

It was not until January 1981, after all of the Union County litigation was over, and thirteen months after the Bergen County suit was filed, that Crispin's attorney served Volkswagen in the Bergen County action. Volkswagen moved to

dismiss the complaint on the basis of plaintiff's failure to serve the summonses within ten days, in violation of Rule 4:4–1. It argued that the plaintiff's attorney's conduct was inexcusable and that the dismissal should be with prejudice.

Plaintiff defended his trial tactics and resisted dismissal, asserting that Volkswagen had suffered no real prejudice and had itself delayed for years in disclosing the defect despite its knowledge. The Bergen County trial court dismissed the complaint without prejudice on April 27, 1981. The court recognized that its decision would countenance needless delay, and that plaintiff's justification for the delay was insufficient to allow the action to continue. It concluded, however, that since there had been no hearing on the merits, the dismissal should be without prejudice, but observed that if the action were re-instituted, a threshold issue would be whether the statute of limitations had run. Both parties appealed that order to the Appellate Division.

On May 26, 1981, plaintiff, to cover his claim if the dismissal were upheld, reinstituted the same complaint against Volkswagen in Essex County. Volkswagen joined DOT, Groves and Rapicka. In October 1981, Volkswagen of America moved to dismiss Crispin's complaint on the basis of the statute of limitations. Plaintiff opposed that motion based on his asserted late discovery of the cause of action against Volkswagen. The trial court denied this motion. Hence, no appeal is before us on the issue of the statute of limitations or discovery of the cause of action.[2]

---

[2]We do not decide the merits of that issue. *See* differing views of majority and dissent in *Fox v. Passaic General Hosp.*, 71 *N.J.* 122 (1976) (absent prejudice, claimant allowed two years from date of discovery of medical malpractice to file action); *see also Lynch v. Rubacky*, 85 *N.J.* 65 (1981). Because Volkswagenwerk of Germany might not be able to claim the statute as a foreign corporation, *see Coons v. American Honda Motor Co.*, 94 *N.J.* 307 (1983), rehearing granted on retroactivity, 95 *N.J.* 234 (1983), only Volkswagen of America moved to dismiss on that ground. Volkswagenwerk of Germany

Volkswagen next moved to dismiss the Essex County suit based upon the entire controversy doctrine. That motion was heard on February 11, 1982, but not decided until December 1982. The trial court denied the motion, and held that the entire controversy doctrine required the joinder only of claims and not parties, citing *Aetna Ins. Co. v. Gilchrist Bros., Inc.,* 85 *N.J.* 550, 558 (1981).[3] Volkswagen sought leave to appeal from that decision, which the Appellate Division denied on December 23, 1982.

On January 7, 1983, defendants sought (1) leave to appeal the Appellate Division's denial of leave to appeal the Essex County entire controversy issue, (2) to certify directly the late service issue from the Bergen County action, then pending in the Appellate Division, and (3) to consolidate the two causes before us. Before we acted on the motion, the Appellate Division affirmed the trial court's ruling in the Bergen County matter. While noting that "[p]laintiffs' tactics were not only unfair to * * * defendants, they were [also] a deliberate abuse of the court rules and a disservice to the court and other litigants as well," that court ruled that the Bergen County court's dismissal without prejudice was not an abuse of discretion, noting that at the time of its ruling the statute of limitations issue had not been tested.

We granted defendants' petition for certification in that Bergen County matter, 94 *N.J.* 531 (1983), and granted leave to appeal in the Essex County matter. *Id.* at 532.

also moved to dismiss for noncompliance with the Hague Convention, but that motion was later withdrawn.

[3]It further ruled that the finding of Crispin's 67% negligence did not preclude the claim against Volkswagen under the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 to –5.3, because that claim involved a "second collision"; that Crispin's release of Groves and DOT precluded Volkswagen from seeking indemnification against them, relying on *Cartel Capital Corp. v. Fireco of N.J.,* 81 *N.J.* 548 (1980); and that since Rapicka was found not negligent, she was entitled to dismissal of the claim for indemnity based upon the doctrine of collateral estoppel. We do not pass upon these issues.

## I.

At the outset, we agree that the time has come to reconsider the application of the entire controversy doctrine to parties as well as claims, in certain limited circumstances. We disagree that any such ruling be made retroactive.

■ In *Aetna, supra,* we fell short of such an extension, preferring instead to refer the matter to our Civil Practice Committee. 85 *N.J.* at 560 & n. 3. In 1982 that Committee recommended that the entire controversy doctrine not be extended to parties because, in its view, new mandatory joinder rules would only intensify the already complex, time-consuming, and expensive nature of modern litigation. But the complex webs of causation that arise in cases of this nature suggest that joinder of known responsible parties in a single action be the norm. Certainly where, as here, a litigant knows of a potentially responsible party, and has already sued that party in another action, the principles that underlay the entire controversy doctrine should come into play. A party should not be permitted to maintain such independent action when a directly related suit is pending.

We recognize the many difficult problems that extension of the doctrine may pose, as expressed in *Aetna, supra,* 85 *N.J.* 550, and the 1982 Report of the Civil Practice Committee. 109 *N.J.L.J.* 497, 502 (1982). We will proceed on a step-by-step basis recognizing that the doctrine is one of judicial fairness and will be invoked in that spirit. The Supreme Court Committee on Civil Case Management and Procedure presently has this issue under consideration and will present its recommendations to us for possible action under our rule-making power.

But we would not apply such a new rule here retroactively. We had repeatedly said that "[t]he essence of that policy is the joinder of claims and not parties." *Thornton v. Potamkin Chevrolet,* 94 *N.J.* 1, 5 (1983); *Aetna,* 85 *N.J.* at 556–60; *R.* 4:27–1(b). Litigants had a right to rely on that policy. There is no doubt that had the Civil Practice Committee recommended

the change suggested in *Aetna*, 85 *N.J.* at 560 & n. 3, and had this Court adopted it, the rule would have been prospective.

Litigants are entitled to order their affairs in accordance with our existing rules of practice. Compulsory joinder extends only to parties without whom litigation cannot feasibly proceed. *R.* 4:28–1. A change in practice and procedure that would retroactively foreclose an otherwise valid claim would be akin to a new limitation of actions. These have never been applied retroactively without offering claimants an opportunity to be heard on the merits of a claim. In *Aetna*, we declined to extend the doctrine to subrogors because "it would be unfair to state a new procedural rule to preclude a party from having its day in court." 85 *N.J.* at 560; *see also* 51 *Am.Jur.*2d *Limitation of Actions* § 31 (1970). We apply the same principle here.

## II.

A second question is presented by the dismissal of the Bergen County complaint without prejudice. Our rules authorize the dismissal of an action for failure to issue a summons within ten days of the filing of a complaint. Rule 4:4–1 states:

> The plaintiff, his attorney or the clerk of the court may issue the summons. If a summons is not issued within 10 days after the filing of the complaint the action may be dismissed in accordance with R. 4:37–2(a). Separate or additional summonses may issue against any defendants.

Rule 4:37–2(a), in turn, states:

> For failure of the plaintiff to cause a summons to issue within 10 days after filing the complaint or to comply with these rules or any order of court, the court in its discretion may on defendant's motion dismiss an action or any claim against him. Such a dismissal shall be without prejudice unless otherwise specified in the order.

In *X–L Liquors, Inc. v. Taylor*, 17 *N.J.* 444 (1955), the Court affirmed the Law Division's refusal to dismiss an action for failure to serve the summons in due time. That complaint involved a timely but defective service, which was annulled by the Appellate Division ten months after issue because defendants' agent had not been served personally. Within thirty-five days, plaintiff forwarded the new summons and complaint to

the sheriff and service was completed. The Court stated the policy behind Rule 4:4–1 and Rule 4:42(2)(a) [predecessor to Rule 4:37–2(a) ]:

> They are designed to insure that after the plaintiff has filed his complaint he will diligently cause the summons to be issued so that the defendant will be advised of the complaint and be afforded early opportunity to answer or take such other steps as he considers appropriate. [17 *N.J.* at 453.]

It found the *X–L* defendant to have had all such timely notice and opportunity to act.

■ Defendant had no such early and timely notice here. It was appropriate, then, for the Bergen County trial court in its discretion to dismiss the complaint. That the court was obliged to dismiss the complaint with prejudice is less clear. Competing policies are involved in disputes over procedural questions such as this. The defendant's right to have the plaintiff comply with procedural rules conflicts with the plaintiff's right to an adjudication of the controversy on the merits. *Crews v. Garmoney,* 141 *N.J.Super.* 93, 96 (App.Div.1976). A range of sanctions is available when a party violates a court rule. Since dismissal with prejudice is the ultimate sanction, it will normally be ordered only when no lesser sanction will erase the prejudice suffered by the non-delinquent party. *See Gnapinsky v. Goldyn,* 23 *N.J.* 243, 248 (1957); *Schlosser v. Kragen,* 111 *N.J.Super.* 337, 346 (Law Div.1970).

■ We recognize that delay that so prejudices a defendant that his ability to defend the case is seriously impaired will call for dismissal with prejudice. *See Moschou v. DeRosa,* 192 *N.J.Super.* 463, 466–67 (App.Div.1984) (dismissal required where defendant's disposal of records after statute of limitations had run prejudiced his case). But the prejudice that defendants claim is primarily lack of joinder in the Union County matter. There is no proof that any evidence is less available now than in 1980 when the Union County litigation took place. The car had apparently been disposed of in 1978 and the difficulty of proving the condition of the seat will be an equal burden on plaintiff. We believe that adequate safe-

guards can be created so that defendants suffer no prejudice. Plaintiff asserts that his claim against Volkswagen is limited to those injuries "enhanced" by the presence of the alleged defect—not injuries caused by the crash alone. *See Huddell v. Levin,* 537 *F.*2d 726 (3d Cir.1976); *Larsen v. General Motors Corp.,* 391 *F.*2d 495 (8th Cir.1968) (differing views as to whether such injuries are in fact divisible); *see also Gelsmine v. Vignale,* 11 *N.J.Super.* 481 (App.Div.1951); *Vadurro v. Yellow Cab Co. of Camden,* 8 *N.J.Super.* 208 (App.Div.), aff'd 6 *N.J.* 102 (1950) (two independent tortfeasors may be regarded as jointly and severally liable if "united in causing plaintiff's total injuries"). The trial court must carefully mould its procedures so that Volkswagen's liability is appropriately limited. Proper credit must be afforded for the recovery previously allowed.

The decision whether to dismiss with or without prejudice is reposed in the sound discretion of the trial court under Rule 4:37–2(a). We share the Appellate Division's concern over the trial tactics of plaintiff's attorney. But we would hesitate to deny plaintiff, because of his attorney's trial tactics, a trial on the merits of his claim that his injuries were caused by a defective car seat. Justice Sullivan, while sitting in the Appellate Division, said it best: "The handling of this case by plaintiffs' then attorney has been described as inexcusable. It is more than that, but I question whether a litigant must suffer because of counsel's utter incompetence." *McLaughlin v. Bassing,* 100 *N.J.Super.* 67, 70 (1967) (Sullivan, J.A.D., dissenting), rev'd on dissent below, 51 *N.J.* 410 (1968).

Only recently, in *Baumann v. Marinaro,* 95 *N.J.* 380 (1984), we reemphasized that the crucial factor in reviewing sanctions for attorney misconduct is whether the client has had a hearing on the merits. As Justice Jacobs wrote, "[A]fter all, justice is the polestar and our procedures must ever be moulded and applied with that in mind." *New Jersey Highway Auth. v. Renner,* 18 *N.J.* 485, 495 (1955).

## III.

Finally, we must deal with the attorney's tactics here. Throughout the opinion we have referred to plaintiff's attorney or counsel in the singular. In fact, he was represented by two attorneys. His initial Union County trial counsel filed the Bergen County suit but brought in current counsel because of expertise in the products liability field. We do not assess the comparative responsibility of either of them here or their separate responsibility. Suffice it to say that the record appears to disclose a lack of candor before a tribunal that is contrary to the standards of our profession that *DR* 7–102(A)(3) imposes upon each member of the bar. In some situations, silence can be no less a misrepresentation than words. *See Berman v. Gurwicz*, 189 *N.J.Super.* 89, 93 (Ch.Div.1981), aff'd, 189 *N.J. Super.* 49 (App.Div.), certif. den., 94 *N.J.* 549 (1983). Counsel's argument in his appellate brief that DOT had failed to present sufficient evidence to implicate Volkswagen appears misleading, inasmuch as he had filed a separate complaint asserting the same cause of action. Rule 1:4–8 requires that there must be "good ground to support" every pleading. These were not the kind of inconsistent positions that an attorney may sometimes advance. *See Andersen v. Exxon Co.*, 89 *N.J.* 483 (1982); *R.* 4:5–6. They appear to be diametrically opposed representations. Every lawyer owes to court and counsel the duty of candor and fairness. An attorney owes a duty of good faith to and honorable dealing with the tribunal before which a matter is proceeding. *See In re Nigohosian*, 88 *N.J.* 308 (1982). While we have refrained from making their client suffer, both counsel here must justify their tactics. We refer this aspect of the case to the Office of Attorney Ethics for further disposition.

The judgments below are affirmed. The cause is remanded to the Superior Court, Essex County, for further proceedings.

HANDLER, J., concurring.

The Court in its opinion recognizes that this case should be controlled by the principles of the entire controversy doctrine.

I concur in this conclusion. I write separately, however, to emphasize the reasons that underlie this result and warrant, in appropriate circumstances such as those presented in this case, the extension of the entire controversy doctrine to compel joinder of parties as well as claims.

The entire controversy doctrine is a principle of judicial administration relating to the procedural disposition of a controversy that has reached the courts and must be resolved by judicial action. The entire controversy doctrine, properly understood, encompasses all judicially cognizable facets of a dispute. The doctrine therefore reasonably requires the joinder, in a single action leading to a comprehensive disposition, of all claims and persons implicated in the entire controversy when failure to effect such joinder will result in duplicate litigation of common issues that could have been resolved in the earlier action.

The concept of the entire controversy doctrine was clearly articulated by Justice Brennan in *Ajamian v. Schlanger*, 14 *N.J.* 483, *cert.* denied, 348 *U.S.* 835, 75 *S.Ct.* 58, 99 *L.Ed.* 659 (1954). Justice Brennan expounded, as have others since, that the basic aim of the reforms introduced by the Judicial Article of the 1947 State Constitution and the implementing court rules was to provide

> for the just and expeditious determination in a single action of the ultimate merits of an entire controversy between litigants. It is a fundamental objective of this procedural reform to avoid the delays and wasteful expense of the multiplicity of litigation which results from the splitting of a controversy. [*Id.* at 485.]

"[C]onsistent with the demands of a responsive civil justice system," the doctrine as generally applied requires "that a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding." *William Blanchard Co. v. Beach Concrete Co., Inc.*, 150 *N.J.Super.* 277, 292 (App.Div.), certif. denied, 75 *N.J.* 528 (1977). Its usual effect is to "require a party to join all its claims against its adversary

when those claims [are] related to and part of the same controversy." *Aetna Ins. Co. v. Gilchrist Bros., Inc.*, 85 *N.J.* 550, 557 (1981).

New Jersey has long held a strong commitment to the doctrine and its goals of judicial economy and fairness to the parties. For example, in *Tevis v. Tevis*, 79 *N.J.* 422, 434 (1979), this Court held that a wife's claim of assault committed by her husband should, under the entire controversy doctrine, have been presented in connection with the divorce action "as part of the overall dispute between the parties, in order to lay at rest all their legal differences in one proceeding and avoid the prolongation and fractionalization of litigation." In *Falcone v. Middlesex Cty. Medical Soc'y*, 47 *N.J.* 92, 94 (1966), upon dismissing a second suit between the same parties for damages, this Court stated that "elemental considerations of fairness to the other party and the urgent need for eliminating the delay and wastage incident to the fragmentation of litigation dictate that all of the aspects of the plaintiff's controversy with the defendant be included within his legal proceeding." We noted that "the piecemeal litigation of fragments of a single controversy is too evident an evil to remain unchecked, within present-day philosophies as to the efficient functioning of litigation." *Id.* (citing *Silverstein v. Abco Vending Serv.*, 37 *N.J.Super.* 439 (App.Div.1955)). Most recently, this Court commented that "the doctrine expresses a judicial policy that when a matter is presented to a judicial forum, the litigants should not fractionalize their claims to the detriment of the system." *Thornton v. Potamkin Chevrolet*, 94 *N.J.* 1, 8 (1983).[1]

---

[1] *See* also Gareeb v. Weinstein, 161 *N.J.Super.* 1 (App.Div.1978) ("the doctrine is grounded on the proposition that the sound administration of the judicial system requires that all facets of a single dispute between parties be completely determined in one action"); *S.D. Sales Corp. v. Doltex Fabrics Corp.*, 96 *N.J.Super.* 345 (App.Div.1966) ("except to advance needs of justice, the fragmentation and multiplication of litigation should not be encouraged."); *Central Penn. Nat'l Bank v. Stonebridge Ltd.*, 185 *N.J.Super.* 289 (Ch.Div.1982) ("the single controversy doctrine is designed to promote the need for judicial

Since its inception, the doctrine has been understood as a rule designed to preserve essential fairness and to avoid duplicitous litigation. These aims were suggested in *William Blanchard Co. v. Beach Concrete Co., supra,* 150 *N.J.Super.* 277, a multi-party and multi-claim action commenced in 1970. There two of the litigants waited until 1975 to assert in a separate action some of their claims, citing in support of their delay "the necessity to present a united front against common opponents." *Id.* at 291. The Appellate Division was unmoved, and affirmed the trial court's finding that the entire controversy doctrine barred the subsequent assertion of the claims. Judge Pressler stated:

> [A] component of the controversy may not be unfairly withheld * * * and a withholding is by definition unfair if its effect is to render the pending litigation merely one inning of the whole ball game. [*Id.* at 294 (citation omitted).]

*See also 9W Contractors, Inc. v. Englewood Cliffs Borough,* 176 *N.J.Super.* 603 (App.Div.1980); *Zaromb v. Borucka,* 166 *N.J.Super.* 22 (App.Div.1979).

The articulated purposes of the conventional doctrine were synthesized quite effectively when it was stated that it serves "to eliminate delay, prevent harassment of a party and unnecessary clogging of the judicial system, avoid wasting the time and effort of the parties, and promote fundamental fairness." *Barres v. Holt, Rinehart & Winston, Inc.,* 74 *N.J.* 461, 465 (1977) (Schreiber, J., dissenting). The doctrine has become such an integral and component part of this state's approach to the resolution of disputes or controversies that it has been held generally applicable in the field of administrative law. *See, e.g., City of Hackensack v. Winner,* 82 *N.J.* 1 (1980); *Hinfey v. Matawan Regional Bd. of Educ.,* 77 *N.J.* 514 (1978). It has been recognized that the underlying principles of the doctrine— "finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time

---

economy and efficiency and the desirability to adjudicate all controversies between parties to the same proceeding").

and expenses; elimination of conflicts, confusion and uncertainty; and basic fairness"—have a central place in the adjudication of all legal controversies. *City of Hackensack v. Winner, supra,* 82 *N.J.* at 32–33.

The same basic considerations that prompted the development and recognition of the doctrine with respect to joinder of claims apply with equal cogency to joinder of persons.[2] The essence of the entire controversy doctrine is its objective—to conclude an *entire* controversy in a *single* action. The resolution of an entire controversy justly and expeditiously in a single judicial proceeding necessarily embraces not only related claims

---

[2]In its present form the doctrine applies essentially to preclude a subsequent claim from being brought against one who was a party to a previous suit between the same parties. (Though the preclusionary effect of nonjoinder of claims existed in the case law, the Rules were not updated to reflect the single controversy principle until September 10, 1979, when Rule 4:27–1(b) was adopted. *Aetna v. Gilchrist Bros., supra,* 85 *N.J.* at 558. This Rule provides: "Each party to an action shall assert therein all claims which he may have against any other party thereto insofar as may be required by the application of the entire controversy doctrine.") We have, however, on several occasions intimated that circumstances may inhere in particular party and claim relationships so as to require joinder of all parties to a suit arising out of the same transaction or occurrence. For example, in *Aetna v. Gilchrist Bros., Inc., supra,* 85 *N.J.* 550, we noted:

> It may be that under some circumstances the failure of a party to be joined or to intervene in a prior action should, after adjudication, bar a second action against that party involving the same subject matter. [*Id.* at 559.]

In the context of determining the validity of an administrative rule concerning the participation of parties in contested administrative cases, this Court stated:

> The [single controversy] doctrine extends not only to joining all related causes but also, under appropriate circumstances, to all parties in a single action. [*In re Uniform Administrative Procedure Rules,* 90 *N.J.* 85, 102 n. 6 (1982) (citing *Van Horn v. William Blanchard Co.,* 88 *N.J.* 91, 108 (1981) (Handler, J., dissenting); *River Edge Savings & Loan Ass'n v. Clubhouse Assocs., Inc.,* 178 *N.J.Super.* 177, 182 (App.Div.1981)).]

Similarly, the Appellate Division has observed that

> extraordinary circumstances may inhere in particular party and claim relationships which require joinder of otherwise separate claims by separate litigants. [*McFadden v. Turner, supra,* 159 *N.J.Super.* 360, 371 n. 2 (App.Div.1978).]

between the litigants but also all persons who have a recognizable interest in the controversy. The ultimate goals to be advanced by the entire controversy doctrine are judicial economy, administrative efficiency, fairness to litigants, and the just resolution of disputes. These goals are served by the joinder in one action of all persons—those against whom claims can be made as well as those with claims against others—provided all such claims arise out of the same transaction or series of transactions, or present some common question of law or fact.

Of course, the doctrine must be invoked flexibly and sensibly. As in federal practice, the trial court would be vested with the discretion to excuse joinder when there is good reason for doing so. *See Fed.R.Civ.P.* 42(b) (court may order separate trials "in furtherance of convenience or to avoid prejudice"). The resolution of joinder problems must center upon a balancing of the competing interests in providing a forum to plaintiffs for recovery of merited relief, affording defendants the opportune time to defend, avoiding the private and public burdens of multiple litigation, enhancing the justness of litigational results, and protecting parties and interested absentees from prejudice. *See* Lewis, "Mandatory Joinder of Parties in Civil Proceedings: The Case for Analytical Pragmatism," 26 *U.Fla.L.Rev.* 381, 431 (1974). The trial court, when presented with the necessity of applying the doctrine or invoking its preclusive effect, must engage in a weighing of these salient values.

Compulsory joinder of parties, combined with judicial discretion to waive the requirement in sufficiently compelling circumstances, offers special benefits to the administration of justice—virtually the same benefits that are derived from the compulsory joinder of claims. First, the rule serves pragmatic concerns for judicial efficiency and economy. Efficiency of the civil justice process is an important consideration, insofar as all litigants are beneficiaries of rules and procedures that reduce the demands upon the system. Successive repetitive litigation poses several evils, as it either "requires the expenditure of additional resources on adjudication, or, if expenditure remains

constant, it diverts those resources from resolution of other controversies of significance. That diversion may appear as delay; or it may be a reduction of the time given to examination of any or all controversies presented, with resulting loss of quality." McCoid, "A Single Package for Multiparty Disputes," 28 *Stan.L.Rev.* 707 (1976).

"Another product of multiplicity is inconsistency. The spectre of public dismay over a system that decides like cases differently is a disturbing one." *Id.* We have struggled to avoid inconsistent adjudications whenever feasible in the interests of justice. *City of Hackensack v. Winner, supra,* 82 *N.J.* 1; *Hinfey v. Matawan Regional Bd. of Educ., supra,* 77 *N.J.* 514. Consistency in the results of decided cases fosters the credibility—and acceptability—of the justice system. Inconsistency, on the other hand, ultimately engenders loss of confidence in the administration of justice.

Diseconomies and multiplicity are not the only concerns at stake in cases of fragmented litigation of essentially one controversy. The entire controversy doctrine has evolved in response to concerns for basic fairness to the immediate and prospective litigants to a dispute. On the one hand, an essential purpose of the rule is "to assure a party to litigation that litigation will be conclusive as to the entire matter which is its real subject." *McFadden v. Turner,* 159 *N.J.Super.* 360, 369 (App.Div.1978). "It is in effect a principle of respose intended to protect one who is already a party to litigation from the expense, delay and harassment implicit in multiple successive actions whose individual scopes are limited to a fragment of the dispute." *Id.*

Similarly, considerations of fairness and justness extend to those potentially affected persons who should, because of their stake in a given proceeding, or by virtue of their potential liability, be joined in a single action and given the opportune forum to defend their interests. For example, it has been noted that the fairest resolution of tort claims follows a trial where all allegedly negligent parties are represented in a single action.

*Van Horn v. William Blanchard, supra,* 88 *N.J.* at 108 (Handler, J., dissenting); Prosser, "Comparative Negligence," 51 *Mich.L.Rev.* 465 (1953). If, as in the instant case, "this failure to jointly assess liability is coupled with a significant ulterior incentive—one unrelated to the merits of the controversy or the search for truth—to underinclude parties, the judicial process can be distorted and the proper administration of justice disserved." *Van Horn v. William Blanchard, supra,* 88 *N.J.* at 108 (Handler, J., dissenting).

The entire controversy doctrine as traditionally invoked is not without some disadvantages. These drawbacks will not be demonstrably greater or different in the extension of the doctrine to embrace related claims involving non-parties. For example, it is not assumed that the rule at present, or upon expansion, will always result in convenience to the court in the particular case. Frequently, comprehensive, all-embracing litigation is complex litigation. Excessive complexity can result in unmanageability. However, the court in any given case can react accordingly.[3] What must be stressed are the comparative benefits in disposing of an entire controversy in a single, comprehensive, though complex, litigation, as opposed to piecemeal disposition of one controversy in successive actions.

It must be noted too that the limits of a policy favoring mandatory joinder of claims and nonparties with an interest in the controversy that is the subject of the litigation are reached when the joinder would result in significant unfairness or jeopardy to a clear presentation of the issues and a just result. Implicit in the development of the entire controversy doctrine is the recognition that economies and the efficient administration of justice should not be achieved at the expense of these paramount concerns. The entire controversy doctrine does not

---

[3] A number of procedural devices are available to the trial court to prevent such a result. These include pretrial conferences, stipulations of the parties as to matters of fact, and utilization of special verdicts to help clarify issues for the jury.

demand monolithic adjudications. Any possible unfairness to litigants, confusion in the presentation of issues, administrative unmanageability, or distortion in the truth-determining process that may result from compulsory joinder of parties—or claims—can be eliminated or at least minimized by a trial court possessed of the discretion to excuse joinder or to order severance.

In sum, the arguments advanced in favor of the entire controversy doctrine as applied to joinder of issues support extension of the rule to joinder of parties. There is not an advantage or disadvantage inherent in the one context that is not implicated in the other. The facts in this case present a telling example of the need for the explicit extension of the entire controversy doctrine to parties as well as claims. As noted in this Court's opinion, the Department of Transportation, a defendant in the first Union County proceeding, sought to join Volkswagen as defendant in that action. Plaintiffs' counsel strongly opposed this joinder. But, he concealed from the court the fact that he had already instituted suit against Volkswagen in Bergen County. Had the court been apprised of this development, it may have been persuaded, as an exercise of sound judicial management, to compel Volkswagen's joinder or to transfer and consolidate the Bergen County action. Moreover, by failing to serve the Volkswagen defendants named in the Bergen County complaint until *after* the Union County litigation had been disposed of, plaintiffs precluded Volkswagen from seeking intervention in that action.

Plaintiffs' counsel's fragmentation of the controversy and tactical maneuvers have traduced the doctrine's goals of judicial conservation, fairness to litigants, avoidance of confusion and uncertainty, and assurance of just results. His actions cannot be reconciled with the strong policy of single litigation encompassed by the entire controversy doctrine. As stated by the majority, "where, as here, a litigant knows of a potentially responsible party, and has already sued that party in another action, the principles that underlay the entire controversy doc-

trine should come into play. A party should not be permitted to maintain such independent action when a directly related suit is pending." *Ante* at 343.

The aims served by a rule mandating the joinder of parties in circumstances such as these are so central to a responsive and principled system of judicial administration that it is unacceptable to leave the decision of joinder to the parties themselves. Procedural maneuvering by attorneys that spread-eagles litigation and squanders judicial resources ostensibly to achieve the best result for a client will only rarely and fortuitously produce the just and fair result that is the goal of the justice system. Such conduct should not be unmonitored. *See New Jersey Highway Auth. v. Renner*, 18 *N.J.* 485, 495 (1955). As exemplified by this case, parties are too often motivated by strategic or tactical concerns that do not serve the larger interests of justice. The rule must be judicially applied.

Here, plaintiffs' counsel took advantage of the procedural rules and past practices to avoid the timely and wholly appropriate joinder of Volkswagen as a party defendant.[4] While joinder in these circumstances was not *compelled* by our rules or any prior decision, it was nonetheless allowable as a matter of judicial discretion. Counsel, through his sharp practice and lack of candor, totally frustrated the proper and sound exercise of that discretion by the trial court, and thereby disserved the administration of justice. If the Court were dealing only with counsel—and were unconcerned with fairness to plaintiffs themselves—I would not in these circumstances hesitate to urge the dismissal of plaintiffs' action against Volkswagen on the basis of the entire controversy doctrine. I am, however, constrained to join the majority in allowing plaintiffs to pursue

---

[4]In fact, the practice of instituting successive lawsuits against interested parties who were known at the onset to be potentially liable for a single injury is not uncommon in our jurisdiction. *See, e.g., Aetna v. Gilchrist Bros., Inc., supra,* 85 *N.J.* 550; *Van Horn v. William Blanchard Co., supra,* 88 *N.J.* 91; *Cartel Capital Corp. v. Fireco of New Jersey,* 81 *N.J.* 548 (1980).

their successive action against Volkswagen only because we have not before this case announced this rule. To apply the doctrine now would penalize plaintiffs for the derelictions of their attorney.

CLIFFORD, J., dissenting in part.

I would hold that as to defendant Volkswagen of America, Inc. (Volkswagen), the dismissal of plaintiffs' Bergen County action should have been with prejudice, for the reason that by the time the motion to dismiss was made, the statute of limitations, *N.J.S.A.* 2A:14–2, had run.[1] I do not agree that the issue of the statute of limitations is not before us. If the statute had run at the time of the dismissal, it necessarily follows that the dismissal had to be with prejudice. It is clear to me beyond debate that it was the trial court's doubts about whether the statute had in fact run that were at the heart of its decision to make the dismissal "without" prejudice rather than, as I would rule, "with."

I

The accident occurred on December 10, 1977. In timely fashion the injured drivers and passenger started separate actions, later consolidated, against the allegedly culpable parties. Thereafter, but before the two years allowed by the statute of limitations had run, plaintiffs' attorney discovered facts that alerted him to the likelihood that the Volkswagen defendants might bear some liability for Crispin's injuries. Accordingly, he commenced a products liability suit against Volkswagen by filing a complaint in Superior Court, Bergen County, on December 7, 1979, three days before the expiration of the two years from the date of the accident.

---

[1] Defendant Volkswagenwerk, A.G. may be in a different status. See *ante* at 341 n. 2.

For the succeeding thirteen months plaintiffs' counsel went through the shenanigans, recited *ante* at 339-40, that transformed the Union County proceedings into a bit of a charade. During that same period the Bergen County suit, as recounted by the Appellate Division,

stayed in a "parked" position, and even when faced with a *R.* 1:13-7(a) notice from the court, dated August 26, 1980, that the matter would be dismissed for want of prosecution, counsel filed no affidavit "explaining the delay and why the action should not be dismissed * * * without call." *Ibid.* It was dismissed on September 30, 1980. Counsel did not move to reinstate the Bergen suit until after a settlement of Crispin's Union County case was effected. That motion, made November 26, 1980, almost one year after the complaint was filed, was granted in an order dated January 5, 1981. This order directed service upon Volkswagen and set a trial date of April 13, 1981, but four months in the future.

Immediately following that January 5, 1981 order, and thirteen months after the complaint against Volkswagen had been filed, the summons issued and the complaint was served. There followed the motion and dismissal, based on Rule 4:4-1 and Rule 4:37-2(a).

That the complaint was properly dismissed is plain. As the Appellate Division pointed out,

[p]laintiff's tactics were not only unfair to Volkswagen and the Union County defendants, they were a deliberate abuse of the court rules and a disservice to the court and other litigants as well. This sort of calculated ploy should not be encouraged.

But the "without prejudice" character of the dismissal meant, simply, that the dismissal did not prejudice plaintiffs from reinstituting their suit. A dismissal "without prejudice" does not amount to an adjudication on the merits and cannot constitute a defense to a second action. A plaintiff is free to proceed, subject to whatever other defenses a defendant may have.

One of those defenses is the statute of limitations. During the course of oral argument on Volkswagen's motion to dismiss, the trial court was informed that if the complaint were dismissed without prejudice and plaintiffs were permitted to file anew, Volkswagen would move for summary judgment on the basis that the action would be time-barred by the two-year statute of limitations. Because the trial court believed that

there might be a statute of limitations issue lurking some-
where, it forebore making the dismissal with prejudice so that
the parties could test that issue elsewhere. Hence, the follow-
ing:

COURT: The Court is going to grant the motion [to dismiss the Bergen County
complaint]. However, there has not been a hearing on the merits; accordingly,
it will not be with prejudice. The plaintiffs take the position that they are not
barred by the statute of limitations. If that is an issue, I believe that the law is
clear that there should be a plenary hearing with regard to whether or not the
statute of limitations has run.

MR. WEINSTEIN: Will your Honor be hearing the testimony with reference to
that hearing?

COURT: So that it's clear, this action is dismissed. If you bring another action,
it would seem to me that there may be an issue at that time; namely, whether
or not the statute of limitations has run.

No one seems to quarrel with the proposition that if it were
obvious (as it is to me) that a second suit would be barred by
the statute of limitations, a dismissal "without prejudice" would
be pointless, particularly when, as here, defendant represents
that the limitation defense is certain to be raised and earnestly
pursued. To permit the course of the second suit to be run
until that final obstacle is in fact encountered—complaint filed,
defendant served, answer filed, motion papers prepared and
filed, argument heard, decision rendered—would be to counte-
nance a profligate abuse of court time and an abasement of the
judicial system. It should not have been allowed here.

## II

The only possible basis for questioning whether the statute
of limitations had expired when the Bergen County suit was
dismissed is our "discovery rule." Under my view of the rule,
see *Lynch v. Rubacky*, 85 *N.J.* 65, 78 (1981) (dissenting opin-
ion); *Burd v. New Jersey Tel. Co.*, 76 *N.J.* 284, 293 (1978)
(concurring opinion); *Moran v. Napolitano*, 71 *N.J.* 133, 142
(1976) (dissenting opinion); *Fox v. Passaic Gen. Hosp.*, 71 *N.J.*
122, 128 (1976) (dissenting opinion), the statute had long since
run by the time the motion to dismiss was made and the order
of dismissal entered.

A decent respect for the indulgence and sensitivity of those members of the Court who have by now become all too well-acquainted with my position on this issue, albeit remaining impenetrably resistant to it, compels me to keep to a minimum any restatement thereof. This will suffice:

[W]hen a plaintiff in personal injury litigation, prior to the expiration of the two-year time limit of the statute of limitations, *N.J.S.A.* 2A:14-2, discovers or reasonably should discover those facts that the law equates with a cause of action, he must proceed with reasonable diligence to bring suit within so much of the two-year period as remains unexpired. This rule would give a plaintiff the benefit of an "expanded" statute of limitations only upon a showing that under the particular circumstances he had insufficient time expeditiously to file his complaint between discovery and expiration of the statutory period. [*Lynch v.. Rubacky, supra,* 85 *N.J.* at 78.]

Here, plaintiffs' discovery of the facts giving rise to a claim against Volkswagen came sufficiently in advance of the two years following the accident as to allow suit to be commenced within that period. Counsel acted with expedition in filing the complaint. The significant point is that plaintiff filed the Bergen County suit on December 7, 1979, within two years of the date of the accident, December 10, 1977. The filing of the complaint in the Bergen County action did not toll the running of the statute. Thereafter the statute ran, while the complaint gathered dust.

Surely under these circumstances there was no need to expand the ordinary statute-of-limitations period or to recognize some "new" one. Plaintiff had "discovered" facts implicating additional defendants and had acted on them within the two-year period. Nothing more remained to be "discovered," and no stretching of time limitations was required to afford plaintiff any additional time to start suit.

All of the foregoing was apparent on the face of things when Volkswagen moved to dismiss the complaint for failure of the summons to have issued for some thirteen months after the filing of the complaint. Therefore, the statute of limitations having already run, the dismissal should have been "with prejudice."

I would reverse and remand to the trial court for entry there of judgment in favor of defendant Volkswagen of America, Inc.

Justices SCHREIBER and GARIBALDI join in this opinion.

HANDLER, J., concurring in the result.

*For affirmance*—Chief Justice WILENTZ and Justices HANDLER, POLLOCK and O'HERN—4.

*For reversal and remandment*—Justices CLIFFORD, SCHREIBER and GARIBALDI—3.