845 A.2d 700 (2004)
368 N.J. Super. 203
Antonio GONZALEZ, Plaintiff-Respondent,
v.
SAFE AND SOUND SECURITY CORP., Defendant/Third-Party Plaintiff,
and
Atlantic City Housing & Urban Renewal Associates, L.P., d/b/a The Schoolhouse Apartments, Defendant-Appellant,
and
Raymond Bunn, Security Officer; Community Realty Management Corporation; and Insignia Management Group, Defendants,
and
Ahmid Abdullah, Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Argued March 9, 2004.
Decided April 6, 2004.
*702 William J. Brennan, III, Princeton, argued the cause for appellant (Smith, Stratton, Wise, Heher & Brennan, attorneys; Mr. Brennan, of counsel; Thomas E. Hastings and Christine L. Nici, on the brief).
R.C. Westmorland, Pleasantville, argued the cause for respondent (Westmorland, Vesper, Schwartz & Quattrone, attorneys; Kathleen F. Beers and Mr. Westmorland, on the brief).
Before Judges CIANCIA, PARKER and R.B. COLEMAN.
*701 The opinion of the court was delivered by
CIANCIA, J.A.D.
On April 25, 1996, plaintiff Antonio Gonzalez was shot by defendant Ahmid Abdullah while on a public portion of premises known as the Schoolhouse Apartments. The apartments were owned by defendant Atlantic City Housing & Urban Renewal Associates, L.P. (ACHURA). Security for the apartments was supposed to be provided by defendant Safe and Sound Security Corp. (Safe and Sound), including its employee, defendant security officer Raymond Bunn. Defendants Community Realty Management Corporation (Community) and Insignia Management Group (Insignia) were managers of the apartments.
Plaintiff's suit against defendants was essentially a claim that they had failed to provide adequate security at the apartments and, as a result, permitted the shooting that resulted in plaintiff's injuries. Community and Insignia settled with plaintiff before trial. Abdullah defaulted, although he testified at trial.
Following a lengthy trial in July and August 2001, the jury found ACHURA, Community, and Abdullah negligent in a manner that proximately caused plaintiff's injuries. Safe and Sound was found negligent but without proximate cause. Insignia was found not negligent as was plaintiff. The jury specifically found that Community and Insignia were agents of ACHURA. Additional details of the verdict *703 are set forth as needed later in the opinion.
ACHURA appeals raising a variety of issues, but not contesting the underlying finding of liability. Indeed, the evidence was abundant, if not overwhelming, that there had been a failure to provide the necessary level of security in the apartments.
ACHURA's first issue focuses on plaintiff's refusal to testify at trial even though he had been served with a notice in lieu of subpoena, and even though the court had ordered him to testify. As a result of being shot twice by Abdullah, plaintiff was paralyzed from the chest down, subject to spasms and incontinent. Plaintiff did not want to testify because of the spasms and because he stuttered when nervous. He also candidly acknowledged that he did not want his credibility placed in issue. He had been convicted of an armed robbery that had occurred in the apartments about a month before the present incident. That conviction had been reversed on appeal, but plaintiff ultimately pled guilty to a lesser form of robbery and was released after getting credit for twoand-a-half years of time served in prison. Plaintiff's refusal to testify was with the advice of counsel, but the specifics of that advice are unclear.
ACHURA sought dismissal of plaintiff's cause of action as the appropriate sanction for plaintiff's refusal to testify. The trial judge believed a strong adverse inference charge was sufficient under the circumstances. The judge also allowed for the possibility of a contempt hearing following trial, although the record before us does not reflect whether that occurred. The judge also ruled that even if plaintiff testified, his prior robbery conviction would not be admissible to attack his credibility. Defendants were allowed virtually unrestricted use of plaintiff's deposition testimony.
Our review of the record satisfies us that the trial court did not abuse its discretion in choosing a sanction short of dismissal. Precluding the use of plaintiff's prior conviction is a much closer question but essentially moot in light of the absence of testimony from plaintiff.
By all accounts, plaintiff's conduct leading up to the shooting was not such as to lend any assistance to the defendants at trial. Plaintiff and a friend entered the premises with the intent of visiting someone. Their exact purpose was not clear but nothing suggests, including plaintiff's answers to interrogatories or those excerpts from plaintiff's deposition disclosed to the jury, that plaintiff was at the apartments for an illegal purpose. There was no credible evidence that plaintiff possessed a weapon. A friend of Abdullah's initially said plaintiff had fired a gun, but he recanted at trial explaining that he had lied to help Abdullah. Abdullah himself testified that plaintiff did not have a gun. An investigating police detective also said there was no evidence that plaintiff had a gun. Plaintiff was essentially an innocent bystander.
Plaintiff's friend, Antoine Robinson, got into an argument with Abdullah outside the apartments and it escalated into a fistfight. A crowd formed. Abdullah got the worst of the altercation and decided to retaliate by shooting Robinson. As plaintiff and Robinson were walking away from the apartments, they were both shot by Abdullah. Plaintiff and Robinson were attempting to get a pedestrian exit gate open when the shooting occurred. Thus, while it cannot be said that plaintiff's testimony at trial would have been insignificant or merely cumulative, we also cannot perceive any realistic possibility that defendants would have been materially and legitimately assisted by plaintiff's testimony.
*704 A trial court has the discretion to impose a variety of sanctions when a party fails to comply with a court order or violates a court rule. See Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 344-345, 476 A.2d 250 (1984). A remedy of dismissal is not favored if lesser sanctions will suffice. Woodward-Clyde Consultants v. Chem. and Pollution Sciences, Inc., 105 N.J. 464, 471, 523 A.2d 131 (1987); Crispin, supra, 96 N.J. at 345, 476 A.2d 250; Manorcare Health Servs., Inc. v. Osmose Wood Preserving, Inc., 336 N.J.Super. 218, 230-231, 764 A.2d 475 (App.Div.2001); Connors v. Sexton Studios, Inc., 270 N.J.Super. 390, 393, 637 A.2d 232 (App.Div.1994). Here, the trial judge chose to give a strong adverse inference charge which, among other things, told the jury that plaintiff had "refused" to testify and it could infer that plaintiff "would have testified adversely, against his interest, on any issue or any fact in this case...."
We review the court's determination as an exercise of discretion. We will not interfere in discretionary decisions unless "an injustice appears to have been done." Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517, 655 A.2d 1368 (1995); Cavallaro v. Jamco Prop. Mgmt., 334 N.J.Super. 557, 571, 760 A.2d 353 (App. Div.2000); Cunningham v. Rummel, 223 N.J.Super. 15, 19, 537 A.2d 1314 (App.Div. 1988). We find no such injustice in the present instance. Although reasonable persons might differ, the trial court's approach was a reasonable choice. Other courts have made analogous decisions and not been second-guessed on appeal. Nasrallah v. Davilla, 326 Ill.App.3d 1036, 260 Ill.Dec. 759, 762 N.E.2d 25, 31-32 (2001) (finding adverse inference charge to be appropriate remedy when defendant refused to testify even though subpoenaed by plaintiff); McGinnis v. Aetna Life & Cas. Co., 398 Mass. 37, 494 N.E.2d 1322, 1323 (1986) (holding that adverse inference was warranted where the plaintiff failed to testify); Ralph M. v. Nancy M., 280 A.D.2d 995, 721 N.Y.S.2d 192, 193 (2001) (upholding trial court's drawing of an adverse inference where plaintiff failed to testify); Levy v. Equitable Fire & Marine Ins. Co., 88 R.I. 252, 146 A.2d 231, 233 (1958) (upholding trial court's drawing of an adverse inference from failure of plaintiff to testify). Nor does ACHURA's position gain any greater strength from plaintiff's attorney advising the jury that plaintiff acted with advice of counsel. That information did not negate the adverse inference charge.
Defendants wanted to attack plaintiff's credibility by examining him in front of the jury but, in our view, plaintiff's credibility on these particular facts was tertiary to the pivotal issues. His credibility did not bear on defendants' obligation or failure to provide adequate security. The version of events leading up to the shooting was not materially disputed. As to plaintiff's prior conviction, normally such a conviction is admissible to attack credibility. N.J.R.E. 609. When a party does not testify, his credibility is not in issue. Plaintiff did not attempt to use his own deposition in lieu of live testimony. It was defendants who were at liberty to use plaintiff's deposition testimony. That use, however, did not then open the door to an attack on plaintiff's credibility.
ACHURA also contends that plaintiff's failure to testify prevented them from exploring plaintiff's status as a licensee, invitee or, perhaps, trespasser. ACHURA contends that plaintiff's status would have altered the nature of their obligation toward him and that the trial court erred by instructing the jury on the standard of care appropriate to invitees. On the present facts we find these arguments unpersuasive.
*705 Plaintiff was in the public area of a commercial apartment complex. Over twenty years ago, our Supreme Court noted that "[t]he historical classifications of the degrees of care owing to visitors upon land are undergoing gradual change in the law in favor of a broadening application of a general tort obligation to exercise reasonable care against foreseeable harm to others." Butler v. Acme Markets, Inc., 89 N.J. 270, 277, 445 A.2d 1141 (1982). More recently, our Supreme Court has had occasion to note that the traditional common law classifications of the victim's status in relation to the landowner, have limited utility in determining the defendant's duty of care. Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 437-438, 625 A.2d 1110 (1993).
In Kuzmicz v. Ivy Hill Park Apartments, Inc., 147 N.J. 510, 512-513, 688 A.2d 1018 (1997), plaintiff was injured while walking on a path across a cityowned vacant lot between his apartment complex and a shopping center. The Court noted that "[i]n the related context of the duty of landowners for injuries that occur on their premises, the analysis no longer relies exclusively on the status of the injured party." Id. at 515, 688 A.2d 1018. And, in Brett v. Great Am. Recreation, Inc., 144 N.J. 479, 488-490, 677 A.2d 705 (1996), plaintiffs sued a ski area operator for injuries incurred during a tobogganing accident. The Court wrote, "[i]t is settled that the common-law classifications of persons on land should be applied flexibly in assessing the landowner's general tort obligation to avoid foreseeable harm to others." Id. at 508-509, 677 A.2d 705. As the Court stated in J.S. v. R.T.H., 155 N.J. 330, 337, 714 A.2d 924 (1998), "[f]oreseeability of the risk of harm is the foundational element in the determination of whether a duty exists" (citing Williamson v. Waldman, 150 N.J. 232, 239, 696 A.2d 14 (1997)).
In our view, it makes no legal difference whether plaintiff was a licensee or an invitee. In Taneian v. Meghrigian, 15 N.J. 267, 277-278, 104 A.2d 689 (1954), the Court stated:
It has long been the rule in New Jersey that the retention of control of the stairways, passages and other common facilities of a multi-unit dwelling house lays upon the possessor the duty of reasonable care for safety in use; and the responsibility extends not alone to the individual tenant, but also to his family, servants and employees, business visitors, social guests, and the like: for those who enter in the right of the tenant, even though under his mere license, make a permissible use of the premises for which the common ways and facilities are provided. They come upon the land by invitation of the landlord, as such facilities afford "to the tenants and those having lawful occasion to visit their apartments the right of passage to and fro"; the landlord is in this regard "under the responsibility of a general owner of real estate who holds out invitations or inducements to other persons to use his property"; the landlord's obligation "is that reasonable care and skill have been exercised to render the premises reasonably fit for the uses which he has invited others to make of them."
If it might be argued that a commercial property owner's duty to a trespasser would nevertheless be different from that owed a licensee or invitee, the short answer is that there was no proof plaintiff was a trespasser. The likelihood that defendants could have shown plaintiff to have been a trespasser if plaintiff had been examined under oath is virtually nonexistent. It was not developed on discovery, no other witness testified to such a *706 status, the facts as shown did not imply it, and we seriously doubt plaintiff would somehow have suddenly testified contrary to the version of events he gave on discovery. Simply put, the prospects of ACHURA advancing its position by questioning plaintiff as to his purpose in being on the premises was extremely remote if existent at all.
The plaintiff was awarded fees and costs under the offer of judgment rule. R. 4:58-2. Plaintiff had offered to settle with ACHURA for $800,000. The jury returned a damage verdict of $2,364,331.45, allocating liability forty percent to ACHURA, thirty percent to Community, and thirty percent to Abdullah. For purposes of applying the provisions of R. 4:58-2, the trial court combined the liability of ACHURA and Community because the jury had found Community to be an agent of ACHURA. The trial judge further found that ACHURA understood that plaintiff's offer to accept $800,000 included ACHURA's liability as Community's principal. The trial court then apparently measured plaintiff's offer of judgment against ACHURA's seventy percent liability to establish that plaintiff's actual recovery was 120 percent above the settlement offer plaintiff had made to ACHURA.
ACHURA contends its liability for fees and costs under R. 4:58-2 should not have been measured against the jury verdict but, rather, by reference to its insurance coverage. This argument comes about as follows.
After plaintiff's complaint was filed, but before trial began, ACHURA filed a petition in bankruptcy. Upon joint application of plaintiff and ACHURA, the Bankruptcy Court lifted the automatic stay imposed by 11 U.S.C.A. § 362(a) to permit the litigation to go forward. The bankruptcy judge, however, qualified this permission by limiting plaintiff's recovery against ACHURA to "any insurance coverage in effect which covered the Debtor at the time of any alleged incident as set forth in the Superior Court Complaint...."
At the time of the shooting, ACHURA and Community were insured by National Union under a commercial general liability policy providing a million-dollar limit per occurrence for bodily injury and also providing coverage for "[a]ll costs taxed against the insured" in litigation. One hundred thousand dollars of the policy was expended to settle plaintiff's claims against Community.
ACHURA thus argues that for purposes of R. 4:58-2 the plaintiff's offer to accept $800,000 in settlement should not be compared with the verdict but, rather, with the available limits of the insurance policy. We disagree. R. 4:58-2 speaks in terms of a claimant obtaining a "verdict or determination at least as favorable as the rejected offer ..." and of a "recovery ... in excess of 120% of the offer." In Lobel v. Trump Plaza Hotel & Casino, 335 N.J.Super. 319, 322-323, 762 A.2d 305 (App.Div.2000), we found that the words "verdict," "determination," and "recovery" as used in R. 4:58-2 must be viewed in the same context and must receive the same interpretationi.e., "the jury's assessment of the value of plaintiff's claim expressed in dollar terms." We find no basis to test plaintiff's R. 4:58-2 offer against the limits of the insurance policy rather than the jury's verdict. This is not to suggest any lack of compliance with the Bankruptcy Court's order. Plaintiff's actual recovery is limited to that which is available under ACHURA's insurance policy.
Finally, we find no merit in ACHURA's contention that its forty percent liability should not have been combined with its agent's thirty percent liability for purposes of evaluating whether *707 ACHURA's share of liability under the verdict was in excess of 120 percent of plaintiff's settlement offer. We view the trial court's methodology as a reasonable application of R. 4:58-2 on the facts presented.[1]Cf. Wiese v. Dedhia, 354 N.J.Super. 256, 264, 806 A.2d 826 (App.Div.2002) (concluding that offer of judgment rule authorizes spousal plaintiffs with interrelated claims to submit a joint offer of judgment and that a defendant who rejects the offer bears the financial consequences where the aggregate judgment exceeds 120 percent of the joint offer). The jury specifically found that Community was ACHURA's agent. The trial judge found that ACHURA understood that plaintiff's settlement offer encompassed ACHURA's liability as Community's principal. The consequences here flow from the basic proposition that a principal is liable for the tortious acts of its agent acting within the scope of the agent's authority. Baldasarre v. Butler, 132 N.J. 278, 289, 625 A.2d 458 (1993). Moreover, ACHURA's duty as a landowner to use reasonable care to protect invitees against known or reasonably discoverable dangers is non-delegable. Accardi v. Enviro-Pak Sys. Co., Inc., 317 N.J.Super. 457, 462, 722 A.2d 578 (App. Div.), certif. denied, 158 N.J. 685, 731 A.2d 45 (1999).
For the reasons stated the judgment in favor of plaintiff is affirmed.
NOTES
[1] R. 4:58-4 speaks to multiple defendants as offerors under various circumstances. No portion of R. 4:58 addresses multiple defendants as offerees of plaintiff.