(s)

Eugene J. Coyle, M.D.

EJC:ss

603 A.2d 162

NAT BREW, PLAINTIFF, v. MARK STERN, M.D., ET AL., DEFENDANTS.

Superior Court of New Jersey
Law Division Essex County

Decided September 26, 1991.

_Emanuel Needle_ for plaintiff (_Kohn & Needle_, attorneys).

_James Andrews_ for defendant (_Friedman Siegelbaum_, attorneys).

_Daniel J. Pomeroy_ for defendant on the second count of the complaint (_Mortenson & Pomeroy_, attorneys).

WEISS, J.S.C.

Defendant, Mark Stern, M.D., filed a motion to dismiss plaintiff's complaint for failure to issue a summons within ten days after the filing of the complaint pursuant to _R._4:4–1. The facts upon which the motion is based are as follows:

On October 14, 1986, plaintiff, Nat Brew, was struck in the eye with a beer bottle. As a result of this injury to his eye plaintiff underwent surgery on October 29, 1986. Plaintiff subsequently filed a lawsuit against the owner of the business and premises located at 84 North Walnut Street, East Orange, New Jersey where he was assaulted. This complaint was assigned docket number W–054376–88.

On October 1, 1989, plaintiff filed the complaint against Dr. Stern, United Hospital Center, John Doe, M.D. and Richard Rowe, M.D., said latter two being fictitious names, alleging medical malpractice claims against Stern and the hospital, as well as the intentional tort of battery. No summons was issued by plaintiff's counsel and for a period of more than 17 months the complaint was not served upon Stern.

On July 25, 1990 plaintiff's counsel wrote Stern stating that he represented Brew who had been treated by Stern following injuries which occured on October 14, 1986. A request was made to have Stern send plaintiff's counsel "a complete report, including initial history, findings, diagnosis, nature and course of treatment, condition on discharge and prognosis, after you

have completed treatment of this patient." The letter further requested the results of any x-ray findings and an itemized bill showing the dates of plaintiff's visits to Stern and whether the bill was paid. In the last paragraph of this letter plaintiff's counsel wrote "We shall, of course, protect your bill out of any settlement proceeds received. Please do not send any reports to any insurance company without first giving us the opportunity of seeing said report." Enclosed with the letter was a $200 check for copies of plaintiff's records and report. Nowhere in this letter does plaintiff's counsel tell Stern that plaintiff has filed a malpractice and intentional tort action against him.

On August 17, 1990, a notice of dismissal pursuant to *R.*1:13–7 was sent to plaintiff's counsel. Plaintiff's counsel filed a certification in opposition to the motion to dismiss in which he set forth the following:

2. We are in the process of ascertaining the correct identity of the various defendants named in the complaint so that arrangements can be made for proper service of process.

A request was made that the matter be continued on the active trial list.

On September 11, 1990, Stern submitted a six-page report to plaintiff's counsel in compliance with his request of June 25, 1990.

In December 1990, pursuant to *R.*1:13–7, a second notice of motion to dismiss the complaint for lack of prosecution was sent to plaintiff's counsel. In response to this motion to dismiss plaintiff's counsel filed a second certification dated December 20, 1990 in which he repeated paragraph two of the earlier certification that he was in the process of ascertaining the correct identity of the various defendants for the purposes of service. Because counsel inserted an incorrect docket number the certification was not made part of the papers relating to the motion and the matter was dismissed by the court on February 23, 1991. Upon motion by plaintiff's counsel, based upon a certification from an associate in plaintiff's counsel's

office the matter was reinstated and returned to the active calendar by an order dated March 26, 1991.

On March 11, 1991, at a time when plaintiff's counsel knew that the this matter had been dismissed by the court and not yet restored to the active list, plaintiff's counsel forwarded the summons and complaint by mail to Stern. Upon receipt of the summons and complaint Stern turned the matter over to his insurance carrier who advised Stern that the second count of the complaint which alleges that he committed a battery upon plaintiff was not covered by his malpractice policy. Its defense was therefore subject to a reservation of right to disclaim in the event that malpractice was not proved but the battery was. As a result, Stern retained personal counsel to defend him as to the second count of the complaint.

On May 16, 1991, Stern's personal counsel noticed Dr. John Scillieri for a deposition on June 25, 1991. Both plaintiff's counsel and Stern's insurance counsel were notified appropriately. On the day before the deposition was scheduled to take place plaintiff's counsel called Stern's personal counsel requesting that the matter be adjourned because he could not attend. In view of this late request Stern's personal counsel refused and plaintiff's counsel took no action by way of approach to the court to have the deposition adjourned. The deposition took place as scheduled in the presence of Stern's personal counsel and counsel selected by his insurance carrier. No one appeared on behalf of plaintiff.

The court requested oral argument on defendant's motion to dismiss because of the disturbing nature of the allegations contained in the certifications accompanying the motion. At oral argument the reason advanced by plaintiff's counsel for not serving the summons and complaint upon Stern or United Hospital Center, a co-defendant, was that counsel was attempting to ascertain the names of all other parties who might be involved before serving the summons and complaint. Plaintiff's counsel stated that he was having difficulty obtaining the

hospital records. When asked by the court whether it would not have been easy to obtain both the hospital records and the names of other persons who might be involved by serving the summons and complaint upon Stern and the hospital and then serving interrogatories and/or taking depositions, plaintiff's counsel response was not persuasive. When the court quizzed plaintiff's counsel about the contents of the two certifications he filed in opposition to the motion to dismiss pursuant to *R*.1:13–7, especially the reference to the attempt to ascertain the names of defendants for the purpose of service and the fact that he knew the names and addresses of both Stern and United Hospital Center, his response was that he was still attempting to obtain the names of other persons who might be involved.

■ *R*.4:4–1 provides

The plaintiff, his attorney or the clerk of the court may issue the summons. If the summons is not issued within 10 days after the filing of the complaint the case may be dismissed in accordance with *R*.4:37–2(a). Separate or additional summonses may issue against any defendants.

*R*.4:37–2(a) allows the dismissal of a complaint in the court's discretion for failure to issue a summons within ten days. Ordinarily, in the absence of demonstrable prejudice to defendant, a complaint should not be dismissed because of untimely issuance of a summons. *Crispin v. Volkswagenwerk, A.G.*, 96 *N.J.* 336, 346, 476 *A*.2d 250 (1984); *State v. One 1986 Subaru*, 120 *N.J.* 310, 315, 576 *A*.2d 859 (1990). In determining whether prejudice exists we are primarily concerned with the impairment of defendant's ability to defend on the merits.

■ In the present case, Stern claims prejudice on two grounds; first, with full knowledge that he had filed a complaint against Stern, plaintiff's counsel requested the doctor to prepare and deliver a complete report of his treatment of plaintiff. The thrust of Stern's second argument is that Scillieri, with whom both Stern and plaintiff had conversations concerning the proposed surgery Stern performed on plaintiff, retired about three years ago and has since mislaid his records and has been unable to find them after a diligent search.

Finally, the court has a concern because of the two certifications of August 28, 1990 and December 20, 1990 filed by plaintiff's counsel in opposition to the court's notice of motion to dismiss for lack of prosecution pursuant to *R*.1:13–7.

One basis advanced by Stern, in support of his motion to dismiss the complaint, is the prejudice that he has suffered as a result of Scillieri being unable to find his records at this time about events which occurred almost five years ago. A few months after Stern received the summons and complaint his personal counsel scheduled Scillieri's deposition for June 25, 1991.

At the time of his deposition, Scillieri was approximately 88 years old, having retired from practice three years before. At Scillieri's deposition, he testified that, after receiving the notice his deposition would be taken, he attempted to locate his records but was unable to do so. He was questioned about the events leading up to the surgery performed on plaintiff and discussions concerning plaintiff's consent to the surgery. He responded relying on his memory of events because he no longer had his records. The testimony of Scillieri is critical to Stern's defense to the second count of the complaint which alleges that he committed a battery upon plaintiff. It is this loss of Scillieri's records, his advanced age and the fact that plaintiff's counsel indicated that he would challenge Scillieri's recollection of events which took place in 1986 that Stern says is the prejudice being suffered by him.

In *Moschou v. DeRosa*, 192 *N.J.Super.* 463, 471 *A.*2d 54 (App.Div.1984), plaintiff filed his complaint 37 days prior to the expiration of the six-year statute of limitations. The summons was not issued until 78 days after the complaint was filed which was 42 days after the running of the statute of limitations. The summons and a copy of the complaint was served on defendant 52 days after the running of the statute of limitations. The Appellate Division, in reversing the trial court, dismissed the complaint on the basis that defendant was preju-

diced because he had disposed of his books and records after the statute had run and there were no extenuating circumstances present which would warrant a trial court's refusal to enforce the rule.

Here the testimony and records of Scillieri were critical to defendant's defense of the second count of the complaint because a basic issue would be the credibility of the two sides. Had the summons and complaint been issued and served timely upon Stern, Scillieri's deposition could have been taken 18 months earlier and the possibility of his records being located would have been greater. Plaintiff's counsel's lame excuse that he was attempting to ascertain the names of all of the persons who might be involved before he issued the summons and complaint sounds hollow in light of all of the discovery techniques available to plaintiff had he properly served the known defendants. Plaintiff's right to join additional parties was preserved by including John Doe, M.D and Richard Roe, M.D (said names being fictitious true identities presently unknown) in his complaint. Plaintiff's counsel is not inexperienced.[1] The court will therefore grant Stern's motion and dismiss count two of the complaint with prejudice.

The remainder of Stern's argument, in support of his motion to dismiss the complaint, is based upon an alleged violation of *R.P.C.*4.3 and the false certifications filed by plaintiff's counsel in opposition to the *R.*1:13–7 motions to dismiss

---

[1] In *Brizak v. Needle,* 239 *N.J.Super.* 415, 571 *A.*2d 975 (App.Div.1990), plaintiff's counsel was sued for legal malpractice for failure to file a suit on behalf of plaintiff prior to the expiration of the statute of limitations. Plaintiff's counsel qualified himself as an expert "in the practice of law as it relates to personal injury matters" with particular "experience and knowledge in the area of medical malpractice." In testifying in his defense in that case he attempted to justify his failure to file the suit on behalf of Brizak within the period of the statute of limitations on the ground that he did not think it was ethical to file a medical malpractice action because two doctors indicated that the operating physician in that case did nothing wrong and unless they could come up with a doctor's opinion as to what was wrong in that case there was nothing further he could do.

the complaint for lack of prosecution. In essence, Stern's position is that counsel's misconduct was so egregious that only a dismissal of the complaint will undo the prejudice he has suffered, as well as vindicate the justice system.

*R.P.C.*4.3 provides as follows:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterestd. When a lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter the lawyer shall make reasonable effort to correct the misunderstanding.

Stern urges that, after plaintiff's counsel filed the present action against him, it was a violation of *R.P.C.*4.3 for plaintiff's counsel to request a report from Stern without informing Stern of the suit he had filed against him. Stern contends that he has been prejudiced because plaintiff's counsel fraudulently obtained discovery from him before he was able to consult with an attorney with regard to his rights and/or obligations in the situation and further, that he thought he was being retained as an expert witness by plaintiff. Plaintiff's counsel's response is that he wanted the medical records in connection with plaintiff's suit against the person who struck him on October 14, 1986, and the form letter of July 25, 1990 sent to Stern did not refer to or intimate that Stern was being retained as an expert.

Accepting counsel's position, that Stern was not and could not believe he was being retained as an expert, the fact remains, a complaint had been filed against Stern and this fact was not made known to Stern by counsel when he requested the medical report from Stern. Although the court looks upon plaintiff's conduct as either violating the *R.P.C.* or, if not violating it, as bordering on a violation of the *R.P.C.*, it would be inappropriate under our cases to dismiss plaintiff's complaint solely on this ground.

In *Crispin v. Volkswagenwerk, A.G., supra,* the conduct of plaintiff's counsel, in failing to serve the summons and complaint upon defendant within the time period provided in *R.*4:4–1, and plaintiff's counsel's trial tactics were severely criticized

by the trial court, the Appellate Division and the Supreme Court. However, the Supreme Court, in upholding the Appellate Division's reversal of the trial court's dismissal of the complaint, said:

> But we would hesitate to deny plaintiff, because of his attorney's trial tactics, a trial on the merits of his claim that his injuries were caused by a defective car seat. Justice Sullivan, while sitting in the Appellate Division, said it best: "the handling of this case by plaintiffs' then attorney has been described as inexcusable. It is more than that, but I question whether a litigant must suffer because of counsel's utter incompetence." *McLaughlin v. Bassing,* 100 *N.J.Super.* 67, 70 [241 *A.*2d 237] (1967) (Sullivan, J.A.D., dissenting), rev'd on dissent below, 51 *N.J.* 410 [241 *A.*2d 450] (1968). [96 *N.J.* at 346, 476 *A.*2d 250].

The Supreme Court referred the matter to the Office of Attorney Ethics to investigate counsel's apparent violation of DR7–102(A)3.

Although this court does not minimize the egregious nature of plaintiff's counsel's conduct in this case by his disregard of *R.P.C.*4.3 it would be inappropriate to dismiss the complaint on that basis alone. However, there is much more in this case.[2]

■ The matter which concerns the court is plaintiff's counsel's response to the two notices of motion to dismiss this action pursuant to *R.*1:13–7. On both occasions, plaintiff's counsel supplied the court with a certification in which it is asserted that counsel is "in the process of ascertaining the correct identity of various defendants named in the complaint so that arrangements can be made for proper service of process." No where in any papers filed with this court has plaintiff's counsel asserted any reason why Stern and United Hospital Center

---

[2]Stern's counsel issued a *subpoena* to Dr. Robert Cunningham, a subsequent treating ophthalmogist returnable June 4, 1991 seeking Cunningham's deposition or a copy of his medical records relating to plaintiff in lieu of appearing for depositions. On June 4, neither Cunningham nor his records were produced. According to counsel a telephone call to Cunningham revealed that plaintiff's counsel had instructed Cunningham not to forward the records to Stern's counsel.

were not served within the time required by our rules.[3] Clearly, plaintiff's counsel's two certifications are misleading, if not outright false. At a time when the civil trial calendar is both overburdened and plagued by an insufficient number of judges and staff and when judicial resources, generally both person power and financial, are so limited as to impose a crisis in the expeditious disposition of litigant's matters, should the courts tolerate conduct such as is present in this case? This court is continually confronted with older cases in which discovery has not been completed, although the period for the conduct of discovery has long since passed. Matters are called for trial and on the day of trial counsel request adjournments because discovery has not been taken or completed, experts have not been retained, experts' reports have not been received, physical examinations have not been conducted or counsel are unprepared.[4]

Although the goal of the judicial system is justice and "our procedures must be molded and applied with that in mind," *New Jersey Highway Auth. v. Renner,* 18 *N.J.* 485, 495, 114 *A.*2d 555 (1955), the stricter enforcement of the rules of procedure will not deny litigants' justice if we abandon the path of excusing a lawyer's conduct in the interest of giving the client a day in court and rather require those lawyers, who like doctors when they commit mistakes, to be answerable to their clients for their negligent conduct. The increasing crescendo of complaints about the legal system, that it is being operated primarily for the benefit of the lawyers, begins to have some basis when the system refuses to enforce its own rules of procedure

---

[3] It was only at the oral argument that counsel advanced, as his reason for not serving Stern and United Hospital, that he was waiting until he obtained the names of all possible defendants before he effectuated service.

[4] In the present case, with over two years having lapsed since the commencement of the action and five years since the alleged malpractice occurred, plaintiff's counsel still has no expert who has opined that Stern committed malpractice.

and permits a breakdown of the system and a loss of respect, not only for the rules of procedure, but for the court itself.

In *Jansson v. Fairleigh Dickinson University* 198 *N.J.Super.* 190, 486 *A.*2d 920 (App.Div.1985), Judge Baime expressed the problem thusly:

> We are not insensitive to the legitimate concerns expressed by the trial judge that if our discovery rules are to have any meaningful impact upon our civil dockets they must be strictly enforced. Nor are we unmindful of the perils and gravitational pull of the slippery slope wherein the efficacy of our rules is destroyed by the gradual cumulation of exceptions. We recognize that imposition of the severe sanction of dismissal is imposed not only to penalize those whose conduct warrants it, but to deter others who may be tempted to violate the rules absent such a deterrent. [at 196, 486 *A.*2d 920].

Three years later, the court was still grappling with the same problem.

> A countervailing consideration is the "need to instill firmness and meaning to the provisions of our discovery rules, thereby maintaining a consistent and predictable sense of order...." *Crews v. Garmoney*, 141 *N.J.Super.* 93, 96 [357 *A.*2d 300] (App.Div.1976). If our discovery rules are to have any meaningful impact upon our civil dockets, they must be enforced fairly. As we stated in *Jansson v. Fairleigh Dickinson University, supra*, we are not unmindful "of the perils and gravitational pull of the slippery slope wherein the efficacy of our rules is destroyed by the gradual cumulation of exceptions." 198 *N.J.Super.* at 196, 486 *A.*2d 920. We now find that the hill has a precipice and we are most unwilling to take the fatal plunge. *Murray v. Nicol*, 224 *N.J.Super.* 303, 314, 540 *A.*2d 239 (App.Div.1988).

After considering the totality of the circumstances in this case, this court is prepared not only to climb the hill to the precipice but also to take the fatal plunge. Stern's motion to dismiss the complaint will be granted, with prejudice.