803 A.2d 181 (2002)
353 N.J. Super. 475
Roy E. STANLEY and Ellen Stanley, Plaintiffs,
v.
GREAT GORGE COUNTRY CLUB, Defendant.
Superior Court of New Jersey, Law Division, Bergen County.
Decided March 13, 2002.
*182 Gary A. Werner, Hackensack, for plaintiffs.
Gregory J. Kelly, Plymouth Meeting, PA, for defendant, (Kelly, McLaughlin & Foster, LLP, attorneys).
WALSH, J.S.C.
This matter comes before the Court on a motion by plaintiffs Roy E. Stanley ("Stanley") and his wife Ellen Stanley (collectively "plaintiffs" or "Stanleys") to restore their complaint and to enter default against the defendant Shinnihon USA Co., Ltd., d/b/a Great Gorge Country Club ("Great Gorge").[1] For the reasons that follow, plaintiffs' motion to restore their complaint is granted.

*183 I
Minimal facts can be gleaned from the record provided. On November 12, 1998 Stanley claims he was playing golf at Great Gorge's course located in McAfee, New Jersey. Stanley allegedly was walking on a wood plank walkway/stairway at the golf course when he slipped and fell on an uneven plank, injuring his neck and back. Stanley filed a Customer Incident Report that day claiming he "[w]ent up the stairs and while walking down slipped on wood plank walkway attached to the stairs."
The injury report was forwarded to Great Gorge's insurance company. That company subsequently denied any liability in a letter dated October 18, 1999. On November 2, 2000, ten (10) days prior to the expiration of the statute of limitations, plaintiffs filed their complaint.[2] In it the Stanleys alleged that Great Gorge negligently maintained the walkway where his injuries occurred. The summons issued on March 27, 2001, 145 days after the filing of the complaint.
On May 12, 2001, the Court dismissed the complaint sua sponte pursuant to R. 1:13-7(a) for lack of prosecution. The summons and complaint were not served on Great Gorge until November 7, 2001370 days after the complaint was filed and 179 days after the involuntary dismissal. On November 15, 2001 the Stanleys filed the present motion.
This motion raises two (2) procedural issues. The first issue is whether, under R. 4:4-1, a summons and complaint may be served after a R.1:13-7(a) dismissal but prior to restoration. The Court finds that this practice has been followed since the implementation of Best Practices and does not offend the policies underlying R. 1:13-7(a). Moreover, the Court determines that sufficient good cause exists to restore the Stanleys' complaint. The second issue is whether, under R. 4:37-2(a), Great Gorge has established the requisite prejudice resulting from the Stanleys' failure to issue the summons within ten (10) days of filing their complaint to warrant a dismissal with prejudice. Because the Court finds that Great Gorge has not been unduly prejudiced by the Stanleys' delay, it will not dismiss the complaint with prejudice.

II
R. 1:13-7(a) has been described as an administrative rule "designed to clear the docket of cases that cannot, for various reasons, be prosecuted to completion." Rivera v. Atlantic Coast Rehabilitation & Health Care Ctr., 321 N.J.Super. 340, 346, 729 A.2d 42 (App.Div.1999) (quoting Mason v. Nabisco Brands, Inc., 233 N.J.Super. 263, 267, 558 A.2d 851 (App. Div.1989)). Its utility as a case management tool is apparentoftentimes the plaintiff's receipt of a R. 1:13-7(a) dismissal renews his or her interest in the case. See Mason, 233 N.J.Super. at 267, 558 A.2d 851. The Rivera court aptly observed that R. 1:13-7(a) dismissals usually occur because process is not served. See Rivera, 321 N.J.Super. at 346, 729 A.2d 42. That is the case here. Prior to the adoption of "Best Practices," minimal efforts were required to restore a case. The plaintiff only needed to show that the defect *184 causing the dismissal had been remedied. See Id. at 346, 729 A.2d 42 (citing Mason, 233 N.J.Super. at 267-70, 558 A.2d 851).
Best Practices, a new regimen for the civil part, arose out of a need for uniformity, consistency, and efficiency throughout New Jersey in the procedures governing civil practice. The Conference of Civil Presiding Judges ("CCPJ") was charged with drafting Best Practices in April of 1998. (See Notices to the BarReport of the Conference of Civil Presiding Judges on Standardization and Best Practices, New Jersey Lawyer: Aug. 9, 1999 at 34.)
The project known as `Best Practices'... was undertaken by the Conference of Civil Presiding Judges for the purpose of attempting to improve the efficiency and expedition of the litigation process as well as to restore state-wide uniformity to the wide range of discretionary and increasingly disparate judicial responses to such matters ... as the resolution of discovery problems and disputes, the fixing of trial calendars and adjournments of trial dates. Pressler, Current N.J. Court Rules, Comment 5 R. 1:1-2 (Gann 2002).
Best Practices took several years to formulate. Extensive comment by members of the bar resulted in numerous revisions before finalization of the CCPJ's initial report. (See Notices to the BarReport of the Conference of Civil Presiding Judges on Standardization and Best Practices, New Jersey Lawyer: Aug. 9, 1999 at 34.)
Almost two (2) decades earlier, reform efforts succeeded in simplifying the restoration process after involuntary dismissals of pending actions in the Special Civil Part. In 1982, the committee charged with reviewing the rules applicable to the Special Civil Part examined R. 1:13-7, the rule then governing involuntary dismissals, and recommended significant changes. That committee urged automatic restoration of a dismissed complaint where a plaintiff served the defendant within one (1) year of the involuntary dismissal. (See Reports of the New Jersey Supreme Court's Committees, Report of the Supreme Court's Committee on District Courts, 109 N.J.L.J. Index 497, 510 (June 3, 1982).) The New Jersey Supreme Court adopted this recommendation and created R. 1:13-7(b). (See New Rule Amendments, 110 N.J.L.J. Index 205, 217 (August 19, 1982).) It remains the rule today.[3] The changes reflected in R. 1:13-7(b) were designed to reduce the amount of time and resources expended in restoring cases to the calendar. See Pressler, Current N.J. Court Rules, Comment R. 1:13-7(b) (Gann 2002). As the Committee on District Courts noted in recommending the automatic restoration rule:
This year, the Committee has considered a new proposal for the automatic dismissal, by the district court clerk, without motion or further order of the court, of any matter filed but not served, where no action is taken within 60 days of the return of the unserved summons. In those cases, the matter will be automatically placed on the inactive list and shall be restored without further order of the court within one year of the dismissal upon service of the summons and complaint. The matter will be marked *185 "dismissed subject to automatic restoration within one year." The Committee agreed that the 60 day waiting period, the one-year period for restoration and the automatic restoration upon service of the summons and complaint would provide the greatest protection to all parties. At the same time, the automatic dismissal and/or restoration by the clerk would greatly reduce processing time presently encountered by clerks and judges. Reports of the New Jersey Supreme Court's Committees, [Report of the Supreme Court's Committee on District Courts, 109 N.J.L.J. Index 497, 510 (June 3, 1982). (Emphasis added).]
When the CCPJ tackled the involuntary dismissal procedure applicable in the Law Division, it apparently borrowed from existing practice in the Special Civil Part. (See Notice to the Bar: Report of the Conference of Civil Presiding Judges on Standardization and Best Practices, 156 N.J.L.J. 80, 83 (April 5, 1999) ("March 1999 Report").) The CCPJ sought to develop a statewide, streamlined procedure for involuntary dismissals based on lack of prosecution. The March 1999 Report noted that "[t]he present procedure for dismissals under R. 1:13-7 (lack of prosecution) is cumbersome and often ineffective in many counties." It observed that the involuntary dismissal procedure then in effect allowed attorneys a number of "bites at the apple." In other words, once an attorney received notice that his or her case was about to be dismissed, a boilerplate affidavit would often follow stating why dismissal was inappropriate. The case usually would be removed from the dismissal list, only to reappear the next month. In many instances the same boilerplate affidavit would again succeed in avoiding dismissal.
The CCPJ noted that both time and money was being wasted because of this repetitive R. 1:13-7(a) procedure. In particular the CCPJ noted that "[e]ach month, staff must generate and mail ([then] at 33¢ each) thousands of dismissal notices statewide. In response, attorneys must prepare and the court must read thousands of affidavits stating why service has not been effected. This goes on month after month until finally a case is dismissed." Notices to the BarCivil Best Practices Rules and Procedures, New Jersey Lawyer, Aug. 7, 2000 at B1. Recognizing these inefficiencies, "[t]he Civil Presiding Judges sought to remedy this costly and labor-intensive practice while ensuring due process to the parties. Under the best practices system, the dismissal procedure is streamlined." Id.
Best Practices, as recommended by the CCPJ, was approved by the New Jersey Supreme Court and took effect on September 5, 2000. (See Notice to the BarCivil Best Practice Rules and Procedures, New Jersey Lawyer: Aug. 7, 2000 at B1) Significant changes in the language of R. 1:13-7(a) were made as part of this effort.[4] The *186 primary focus of the involuntary dismissal amendments was to encourage prompt service of process. Judge Sylvia B. Pressler, the noted commentator on civil practice in this State, has observed that the changes to R. 1:13-7(a) were designed:
[T]o eliminate the so-called dismissal calendar and to substitute therefor a notice by the court to plaintiff four months after filing of the complaint advising that the complaint as to a non answering defendant will be dismissed without prejudice 60 days following the date of the notice unless prior to that time, an answer is filed by that defendant, proof of service of process on that defendant has been filed, or a motion is made by plaintiff based on exceptional circumstances precluding timely service. [Pressler, Current N.J. Court Rules, Comment 5 R. 1:1-2 (Gann 2002).]
Since Best Practices have been in effect, the Civil Presiding Judges, in the interest of efficiency, have encouraged service of a complaint dismissed pursuant to R. 1:13-7(a). That body has, in essence, engrafted the service practice in the Special Civil Part onto existing Law Division procedure. Advice from the CCPJ explicitly endorses service of a dismissed complaint. (See Notices to the BarBest Practices Cumulative Update, 165 N.J.L.J. 67, 68 (July 2, 2001)) ("If a defendant is served while a matter is dismissed and that service justifies a motion for reinstatement of the cause of action against that defendant, there is no need to serve notice of the motion to reinstate on a defendant who has not answered and may never answer. (12/20/00 Civil Presiding Judges' meeting")).[5]
The actions of the Civil Presiding Judges hardly are surprising. The Appellate Division, for over a decade prior to the institution of Best Practices, had suggested that a complaint dismissed without prejudice under R. 1:13-7(a) continued to have significance. Mason v. Nabisco Brands, Inc., 233 N.J.Super. 263, 558 A.2d 851 (App.Div.1989). Moreover, the Appellate Division has intimated that complaints in civil cases generally should be restored on motion if served within one (1) year of an involuntary dismissal under R. 1:13-7(a). Id. at 269-70, 558 A.2d 851.
*187 In Mason the plaintiff slipped and fell on accumulated snow and ice. The plaintiff sued just as the statute of limitations was to expire. However, the case remained dormant for over six (6) months and was administratively dismissed without prejudice under the then existing R. 1:13-7(a). After almost one (1) year plaintiff sought restoration and the trial court granted the request. Defendant Nabisco Brands was thereafter served and promptly sought dismissal. The trial court found that the statute of limitations expired as a result of the administrative dismissal and ultimately granted Nabisco's motion.
The Appellate Division characterized the issue on appeal as "whether a reinstated complaint, previously dismissed by the court pursuant to R. 1:13-7(a) ... is subject to the defense of the statute of limitations when the defense could not have been asserted prior to dismissal." Mason, supra. at 265, 558 A.2d 851. The Appellate Division disagreed with the trial court and held that an involuntarily dismissed complaint once restored does not trigger a statute of limitations defense which became available as a result of the dismissal. Id. In reaching the dispositive question, the Appellate Division dealt with the nature of an involuntary dismissal under the then existing R. 1:13-7, which has relevance here. First, the Appellate Division found that the then existing R. 1:13-7(a) implicitly permitted restoration of a dismissed complaint in the Law Division. It reasoned that:
Although R. 1:13-7(a) does not specifically state that a plaintiff has the right to move for reinstatement of a complaint once dismissed, R. 1:13-7(b), which addresses actions filed in the Special Civil Part, clearly envisions the restoration of the original complaint. Indeed, it permits restoration automatically, without `motion or further order,' if service of the summons and complaint occurs within one year of the dismissal date. Presumably, restoration thereafter would have to be on motion. It would be anomalous to interpret the rule so as to allow the restoration of complaints in the Special Civil Part but prohibit such a procedure in other civil cases. [Id. at 269-70, 558 A.2d 851. (Emphasis added).]
Second, and particularly important here, the Appellate Division found that an involuntary dismissal pursuant to R. 1:13-7 was an administrative tool intended to help manage and clear a court's docket. Mason, supra. at 267, 558 A.2d 851. As such, and because such a dismissal is "without prejudice," the underlying complaint and the claim or claims it represents remain viable awaiting reinstatement upon remediation of the condition which provoked the dismissal. The Appellate Division instructed that the closest analogue to the involuntary dismissal anticipated by R. 1:13-7 was discovery practice then existing under R. 4:23-5(a). At the time, failure to answer interrogatories in a timely fashion could lead to a dismissal without prejudice. Upon compliance, however, the complaint would be restored without the break caused by the dismissal giving rise to a statute of limitations defense.[6]Id. at 268, 558 A.2d 851.
The Court believes that R. 1:13-7 itself, the policies behind this Rule as reflected in Best Practices, and the prior and related *188 teachings of our appellate courts tell us that an administratively dismissed complaint with a proper summons may be successfully served on a defendant. Once such service is made, the plaintiff may seek restoration of the complaint. If the court to which the application is addressed restores the complaint then the defendant must answer or move within the time prescribed or risk default.[7]
The question remains whether under R. 1:13-7(a) the Stanleys have shown good cause in order to restore their complaint. In light of the policies behind R. 1:13-7(a), Best Practices, and prior appellate teachings on this subject, it would appear that correction of the deficiency within a reasonable time after the dismissal suffices to establish good cause. The question then arises as to what is a reasonable time? The Court adopts a bright-line test which provides that a rebuttable presumption exists that good cause has been shown if restoration is sought within one (1) year of the involuntary dismissal.[8] This presumption incorporates much of the automatic restoration practice which has existed in the Special Civil Part for two (2) decades and at the same time gives the motion judge flexibility in a truly unusual case to deny relief.
Application of that presumption here provides sufficient good cause to restore the complaint. To be sure the plaintiffs offer little justification for their tardiness, but they served Great Gorge and moved to restore within one (1) year of the involuntary dismissal. And, as will be seen, Great Gorge fails to demonstrate that it has been prejudiced by plaintiffs' conduct. Given the strong public policy favoring adjudications on the merits, the Court would restore the Stanleys' complaint subject to Great Gorge's arguments that R. 4:4-1 and R. 4:37-2(a) require a dismissal with prejudice. Mason, supra. at 270, 558 A.2d 851; see also James v. Chevron U.S.A., Inc., 301 N.J.Super. 512, 549, 694 A.2d 270 (App. Div.1997) (quoting Viviano v. CBS, Inc., 101 N.J. 538, 547, 503 A.2d 296 (1986), aff'd sub nom., 155 N.J. 279, 714 A.2d 898 (1998)). The Court now considers those arguments.

III
R. 4:4-1 governs the issuance of a summons. That rule states: "The plaintiff, the plaintiff's attorney or the clerk of the court may issue the summons. If a summons is not issued within 10 days after the filing of the complaint the action may be dismissed in accordance with R. 4:37-2(a). Separate or additional summonses may issue against any defendants." Id. R. 4:4-1 does not indicate when issuance occurs.
The Federal Rules of Civil Procedure, upon which many of the New Jersey Rules of Court are based, is much more specific as to what constitutes issuance of a summons. See Freeman v. Lincoln Beach Motel, 182 N.J.Super. 483, 485, 442 A.2d *189 650 (Law Div.1981). FED.R.CIV.P. 4(b) provides:
Upon or after filing the complaint, the plaintiff may present a summons to the clerk for signature and seal. If the summons is in proper form, the clerk shall sign, seal, and issue it to the plaintiff for service on the defendant. A summons, or a copy of the summons if addressed to multiple defendants, shall be issued for each defendant to be served. [Emphasis added.]
The Federal Rules of Civil Procedure require strict compliance with these issuance dictates. A leading treatise reports that "[a] summons must be issued by the clerk of the court at the time or after plaintiff files the complaint." 1 MOORE'S FEDERAL PRACTICE, § 4.31[1] (3d Ed.1997). "The summons must be signed and sealed by the court clerk before being issued to plaintiff." Id. at § 4.31[2]. Finally, "[a] summons may not be signed by plaintiff or plaintiff's attorney." Id.; see also Kramer v. Scientific Control Corp., 365 F.Supp. 780, 788 (E.D.Pa.1973) ("One of the purposes of Rule 4(b) is to make sure that the summons is issued ... by the Clerk of Court and not by the plaintiff or his attorney.").[9]
New Jersey courts are not nearly as unyielding. As far back as 1840 New Jersey courts had permitted plaintiff's counsel to issue a summons as an agent of or deputy to the clerk of the court. Whitaker v. Turnbull, 18 N.J.L. 172 (Sup.Ct.1840); see also MORRIS M. SCHNITZER & JULIUS WILDSTEIN, NEW JERSEY RULES SERVICE 1954-1967 AIV 43 (Special Reprint Ed.1982). Moreover, in New Jersey, the clerk of the court need not sign the summons. Id. at AIV 46. Schnitzer and Wildstein, noted commentators on the history of the New Jersey Court Rules, have explained the differences in federal and state practice in the following way:
Federal Civil Rule 4(a) requiring the clerk to issue the "summons" forthwith upon the filing of the complaint and to deliver the summons and copy of the complaint to the marshal or other person making service, was not carried over into the state Rule. Instead the New Jersey practice established in the former Supreme Court by which an attorney issued the process in the name of the Clerk and delivered same to Sheriff for service, had proved to be so satisfactory as to warrant its continuance and adoption in this Rule. Thus the "summons" (which supplanted the former subpoena ad respondendum in Chancery and the citation in matrimonial and probate *190 causes) is issued by the clerk of the court or the plaintiff's attorney upon the filing of the complaint. [Id. at AIV 44.]
Another commentator confirms this departure from the federal model in New Jersey practice:
The means of invoking the jurisdiction of the court in personal actions in cases where the plaintiff is not entitled to bail, is by the issuance of a writ of summons. This is a writ theoretically issued by the court, but in practise (sic), by an attorney. The preparation and sealing of a summons and most other writs is the duty of the attorney issuing the writ, who is, for that purpose, considered as the agent of the clerk of the court. An ordinary seal may be used. The court has said that this practice is usual and permissive. The purpose of the writ of summons is to direct the defendant to appear and defense the action begun against him. [emphasis added]
GEORGE S. HARRIS, PLEADING AND PRACTICE IN NEW JERSEY 37-38 (Rev.Ed.1939). Moreover, New Jersey courts liberally have allowed amendments to the summons to correct any technical defects. Id. at 47 ("A summons is not void notwithstanding irregularities in omitting date, seal, and clerk's signature, or the attorney's address. Such requirements are directory, rather than mandatory, and [summonses] are therefore amendable."); Smith v. Thermo-Fax Corp., 53 N.J.Super. 102, 105-07,146 A.2d 544 (Law Div.1958).
The Court finds that for purposes of R. 4:4-1 a summons is issued when it is dated. In this instance the summons addressed to Great Gorge was dated March 27, 2001. Since R. 1:3-1 and R. 4:4-1 provide that the summons here should have issued no later than November 13, 2000, what then are the consequences of this violation?
To answer this question, the Court must decide whether the Stanleys' complaint should be dismissed under R. 4:4-1 in accordance with R. 4:37-2(a) because of insufficient service of process. The Court finds dismissal is not warranted under these facts.
As noted, R. 4:4-1 requires that the summons issue within ten (10) days of the complaint being filed. Plaintiff is required to issue the summons soon after filing the complaint "... so that the defendant will be advised of the complaint and be afforded early opportunity to answer or take such other steps as he considers appropriate." X-L Liquors, Inc. v. Taylor, 17 N.J. 444, 453, 111 A.2d 753 (1955). If the summons is not issued within that time period, R. 4:37-2(a) provides:
For failure of the plaintiff to cause a summons to issue within 10 days after filing the complaint or to comply with these rules or any order of court, the court in its discretion may on defendant's motion dismiss an action or any claim against the defendant. Such a dismissal shall be without prejudice unless otherwise specified in the order.
The trial court has discretion in deciding whether to dismiss a plaintiff's complaint with prejudice for violating the ten (10) day rule. See Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 346, 476 A.2d 250 (1984). However, "dismissal is reserved for those situations where `no lesser sanction will erase the prejudice suffered by the non-delinquent party.'" Olds v. Donnelly, 150 N.J. 424, 438-39, 696 A.2d 633 (1997) (quoting Crispin, 96 N.J. at 345, 476 A.2d 250).
Justice (then Judge) Sullivan first injected prejudice into the calculus used to determine whether a dismissal was appropriate in McLaughlin v. Bassing, 100 N.J.Super. 67, 241 A.2d 237 (App.Div. 1967). There the Appellate Division directed *191 the dismissal of plaintiff's complaint because of a three and a half (3 1/2) year delay between filing of the complaint and issuance of the summons. The majority in McLaughlin embraced Justice (then Judge) Proctor's view in Pagano v. Krispy Kernals, Inc., 10 N.J.Super. 588, 77 A.2d 511 (Law Div.1950) that prejudice to the defendant was unnecessary"... the fact that plaintiff's attorney states that no unnecessary hardship or injustice was practiced upon the defendant is irrelevant." McLaughlin, 100 N.J.Super. at 69, 241 A.2d 237 (quoting Pagano, 10 N.J.Super. at 591, 77A.2d 511).
Justice Sullivan, dissenting, argued that it was inappropriate to dismiss plaintiff's complaint since the defendants stipulated they had "suffered no specific or demonstrable prejudice as a result of the time lapse." McLaughlin, 100 N.J.Super. at 70, 241 A.2d 237 (Sullivan, J., dissenting). The New Jersey Supreme Court specifically adopted Justice Sullivan's dissent as its decision, making the showing of prejudice a necessary ingredient supporting a dismissal. See McLaughlin v. Bassing, 51 N.J. 410, 241 A.2d 450 (1968), rev'g, 100 N.J.Super. 67, 241 A.2d 237 (App.Div. 1967).
After McLaughlin, the key determinate in a dismissal decision is whether "specific or demonstrable prejudice" was inflicted upon the defendant because of the delay between the filing and service of the complaint. To that end, "[t]he principal concern in determining prejudice is impairment of the defendant's ability to present a defense on the merits." State v. One 1986 Subaru, 120 N.J. 310, 315, 576 A.2d 859 (1990).
Since McLaughlin, few published cases have found sufficient prejudice to support a dismissal with prejudice.[10] And, consideration of those cases demonstrates that the prejudice alleged must be concrete and not hypothetical. In Moschou v. DeRosa, 192 N.J.Super. 463, 471 A.2d 54 (App.Div. 1984), for example, the plaintiff filed a complaint on January 5, 1981, 37 days before the statute of limitations expired. The plaintiff, however, did not issue the summons until 78 days later. On April 3, 1981, nearly three (3) months after filing the complaint, plaintiff served the summons and complaint.
The defendant sought dismissal arguing that plaintiff had violated R. 4:4-1 and R. 4:37-2(a). Defendant claimed that he had discarded important documents after the expiration of the statute of limitations, but prior to issuance of the summons. The Appellate Division agreed the defendant had been prejudiced, finding that the delay between issuance and service of the summons led to the defendant's inability to produce the books or records necessary to corroborate his counterclaim. It sustained the dismissal of plaintiff's complaint. See Moschou, 192 N.J.Super. at 467, 471 A.2d 54.
So too, in Brew v. Stern, 254 N.J.Super. 237, 603 A.2d 162 (Law Div.1991), the court found sufficient prejudice existed to warrant dismissal on the merits. There plaintiff filed his complaint on October 1, 1989 but failed to summon the defendant.
*192 In August, 1990, a notice of dismissal was sent to plaintiff's counsel threatening dismissal for lack of prosecution pursuant to R. 1:13-7. Plaintiff's counsel responded arguing the delay was justified because he was trying to ascertain the identities of all potential defendants. In December of 1990 plaintiff's counsel was sent a repeat notice. While he again responded arguing against dismissal, the response went awry because he listed an incorrect docket number. Consequently, the case was dismissed on February 23, 1991. On March 11,1991, while the case was on the inactive list, plaintiff's counsel sent the summons and complaint by regular mail to the defendant Mark Stern, M.D. ("Stern").
Stern then sought dismissal of the complaint, arguing that he had been prejudiced by Brew's failure to issue the summons as required by R. 4:4-1. Stern claimed that Dr. John Scillieri ("Scillieri"), a critically important witness who was 88 years old, had retired three (3) years prior to service, and had lost the relevant medical records in the process of leaving his practice. As the court saw it: "It is this loss of Scillieri's records, his advanced age and the fact that plaintiff's counsel indicated that he would challenge Scillieri's recollection of events which took place in 1986 that Stern says is the prejudice being suffered by him." Brew, 254 N.J.Super. at 243, 603 A.2d 162. The court found the defendant had been specifically and demonstrably prejudiced and dismissed the plaintiff's complaint on the merits pursuant to R. 4:37-2(a). Id. at 244, 603 A.2d 162.[11]
This Court conducted a hearing on January 25, 2002 in order to review how, if at all, Great Gorge was prejudiced by the delay between the filing of the complaint and the issuance and eventual service of the summons. James v. Bessemer Processing Co., 155 N.J. 279, 315-16, 714 A.2d 898 (1998). Counsel for Great Gorge claimed prejudice on two (2) accounts: first, the employee who took the Customer Incident Report after the accident left the company over two (2) years ago; and, second, Stanley's accident was unwitnessed and the passage of time would no doubt make any evidence harder to uncover.
The Court finds neither of these reasons establishes the necessary prejudice to support a dismissal on the merits of the Stanleys' complaint. Great Gorge has provided no evidence that it will be unable to find its former employee. Presumably, the company has information about that employee as a result of the former employment relationship. Moreover, there is no reason to believe this employee has any particularized knowledge about the accident. Finally, the statement made by Stanley, it would appear, can be received in evidence without the employee appearing. N.J.R.Evid. 803(b)(1), 803(c)(6), and 805.
As to the passage of time, Great Gorge knew of Stanley's fall shortly after it happened because of the Customer Incident Report filed by him. It thereafter had its insurance company conduct an investigation into Stanley's claim, which denied liability. The Court finds that Great Gorge has failed to establish the necessary prejudice to warrant a dismissal on the merits. To the contrary it would appear that Great Gorge has enough information to adequately defend plaintiffs' claims on the merits. Accordingly, the Court will not dismiss the complaint pursuant to R. 4:37-2(a).

*193 IV
For the reasons stated in this Opinion, the Court finds that, pursuant to Best Practices, a summons and complaint may be served after a R. 1:13-7(a) dismissal and that sufficient good cause exists here to restore the complaint. Further, the Court will not dismiss plaintiffs' complaint with prejudice because Great Gorge has failed to establish the prejudice required by R. 4:37-2(a). The Stanleys' complaint is hereby restored to the active trial calendar.
NOTES
[1] Plaintiffs' request to enter default against Great Gorge was withdrawn in a letter to the Court dated December 11, 2001. On December 21, 2001, after an apparently unopposed motion, the Court ordered the case restored to the active trial calendar. Shortly thereafter, Great Gorge's counsel notified the Court that he believed the motion had been adjourned until January 11, 2002 based on a letter from plaintiffs' counsel dated December 13, 2001. The Court never received that letter. On January 9, 2002, the Court vacated its December 21, 2001 Order, and placed plaintiffs' motion to restore on the calendar for January 25, 2002. The Court heard oral argument on that day.
[2] Because the Court grants the Stanleys' motion to restore, Great Gorge cannot now assert statute of limitations as a defense. The Appellate Division has held that the statute of limitations cannot be raised as a defense to a complaint that was dismissed pursuant to R. 1:13-7(a) and subsequently reinstated after the statute of limitations has run. See Mason v. Nabisco Brands, Inc., 233 N.J.Super. 263, 558 A.2d 851 (App.Div.1989) ("Thus, if a defendant could not raise the statute of limitations defense prior to the dismissal of the complaint, it cannot do so at the time it is restored.").
[3] R. 1:13-7(b) provides:

(b) Whenever any civil action filed in the Special Civil Part has not been served within sixty (60) days of the date of filing, the clerk of the court shall dismiss the matter and notify the plaintiff that the matter has been marked "dismissed subject to automatic restoration within one year." The matter shall be restored without motion or further order of the court upon service of the summons and complaint within one (1) year of the date of the dismissal.
[4] R. 1:13-7(a) provides:

(a) Except in receivership and liquidation proceedings, in condemnation and foreclosure actions as otherwise specified by R. 4:43-2(d), and except as otherwise provided by rule or court order, whenever any civil action shall have been pending in any court for [6] four months without any required proceeding having been taken therein, [the Clerk of the Superior Court or the deputy clerk of the Superior Court in the county of venue, shall give to the parties or their attorneys written notice of a motion by the court to dismiss the same for want of prosecution. The notice shall advise that unless an affidavit is filed with the court at least 5 days prior to the return date explaining the delay and why the action should not be dismissed, the action will be dismissed without call. For purposes of this rule, adjournments, extensions of time, and applications, motions or hearings in connection therewith, shall not be considered a proceeding taken. Unless otherwise ordered by the court, a dismissal under this rule shall be without prejudice] the court shall issue Written notice to the parties advising that the action as to any or all defendants will be dismissed without prejudice 60 days following the date of the notice unless, within said period, proof of service of process has been filed, or an answer has been filed, or a motion has been filed asserting that the failure of service or the filing of an answer is due to exceptional circumstances. If the plaintiff fails to respond as herein prescribed, the court shall enter an order of dismissal without prejudice as to any named party defendant who has not been served or has not answered and shall furnish the plaintiff with a copy thereof. Reinstatement of the action after dismissal may be permitted only on motion for good cause shown. The court may issue the written notice herein prescribed in any action pending on the effective date of this rule amendment, and this rule shall then apply.
The Court has bracketed the pre-Best Practices R. 1:13-7(a) provisions, and underlined the changes implemented by Best Practices.
[5] The CCPJ Cumulative Update is not precedential. See Notices to the BarBest Practices Cumulative Update, 165 N.J.L.J. 67 (July 2, 2001). However, the CCPJ is a body formed by the New Jersey Supreme Court, advises that Court on various issues, and was in charge of drafting Best Practices. Its views and guidance subsequent to implementation of the new rules plainly are entitled to respect.
[6] The dismissal procedure mandated by R. 4:23-5(a) under Best Practices is now applicable to all the discovery devices, not just interrogatories. See Notices to the BarReport of the Conference of Civil Presiding Judges on Standardization and Best Practices, New Jersey Lawyer: The Weekly Newspaper, Aug. 9, 1999 at 34; Pressler, Current N.J. Court Rules, Comment 3 R. 4:23-5(a) (Gann 2002).
[7] The CCPJ may wish to consider recommending a change to R. 1:13-7(a) so as to provide for automatic restoration of complaints in the Law Division provided valid service occurs within one (1) year of the involuntary dismissal as is currently in effect in the Special Civil Part.

For the reasons expressed in this Opinion, the Court believes that any answer put forward while the complaint is administratively dismissed should be filed with the motion to restore and if the motion is granted should be entered of record thereby joining issue.
[8] As the Appellate Division recently indicated, "excusable neglect," the standard for vacating a prior order or judgment within one (1) year under R. 4:50-1, can be of assistance in reviewing the question of good cause discussed in R. 1:13-7(a). See Rivera, 321 N.J.Super. at 347-48, 729 A.2d 42.
[9] In Macaluso v. New York State Dept. of Envtl. Conservation, 115 F.R.D. 16 (E.D.N.Y. 1986), the court determined that a summons which was not issued by the clerk, and did not have the clerk's signature or a court seal presented more than a technical defect. See id. at 18 (citing Fed.R.Civ.P. 4(a), (b)). Accordingly the summons that plaintiff attempted to serve was completely invalid. See id. at 17. The Macaluso court stated that such process evidences "a complete disregard of the requirements of process set forth clearly and concisely in Rule 4. Accordingly, the Court declines to exercise its discretion to grant leave to amend process." Id. at 18 (citing Gianna Enters. v. Miss World (Jersey) Ltd., 551 F.Supp. 1348, 1358 (S.D.N.Y.1982)). Other cases have found that failure to have the court clerk issue the summons, sign the summons, or place a seal on the summons renders it defective. See Cloyd v. Arthur Anderson & Co., 151 F.R.D. 407 (D.Utah 1993), aff'd, 25 F.3d 1056 (10th Cir.1994); United States v. National Muffler Mfg., Inc., 125 F.R.D. 453, 455 (N.D.Ohio 1989); Morales v. Robert Fleming, Inc., No. 89 Civ. 2106, 1989 WL 303516, at *2 (S.D.N.Y. Oct. 30, 1989); Aim Telephones, Inc. v. AG Communications, Civ. A. No. 88-1037, 1988 WL 133444, at *2 (D.N.J. Dec.12, 1988); but see Krieger v. American Express Fin. Advisors, No. 98-CV-0782E(F), 2000 WL 207119, at *4 (W.D.N.Y. Feb. 16, 2000) (distinguishing Macaluso).
[10] Many courts have refused to dismiss the complaint finding that the defendants were not prejudiced. See, e.g., James v. Bessemer Processing Co., 155 N.J. 279, 315-16, 714 A.2d 898 (1998) (case remanded to the Law Division for an evidentiary hearing on the issue of prejudice); State v. One 1986 Subaru, 120 N.J. 310, 315, 576 A.2d 859 (1990); Crispin, 96 N.J. at 345-46, 476 A.2d 250; Zoning Bd. of Adjustment of the Township of Sparta v. Service Elec. Cable Television of N.J., Inc., 198 N.J.Super. 370, 378, 487 A.2d 331 (App.Div. 1985); Patterson v. Monmouth Reg'l High Sch. Bd. of Educ., 222 N.J.Super. 448, 456, 537 A.2d 696 (App.Div.1987), certif. denied, 110 N.J. 183, 540 A.2d 180 (1988).
[11] The Court notes that in both Moschou and Brew the needed prejudice warranting dismissal on the merits was found after evidence was presented that documents or information had been destroyed between the time the summons was issued and finally served. No such evidence has been presented here.